[Civ. No. 46906. First Dist., Div. Two. June 3, 1982.]

R. ROBERT WATTS et al., Cross-complainants and Appellants, v. CROCKER-CITIZENS NATIONAL BANK, Cross-defendant and Respondent.

518

COUNSEL

Jeffrey P. Widman, Berliner, Cohen & Biagini and Hugh T. Thomson for Cross-complainants and Appellants.

John P. Marlais and Rankin, Oneal, Center, Luckhardt, Marlais, Lund & Hinshaw for Cross-defendant and Respondent.

OPINION

LEVINS, J.*—Donald and Mary Dale (Dale), and R. Robert Watts (Watts), appeal[1] from an order dismissing their respective cross-complaints against Crocker-Citizens National Bank (Crocker) on grounds of the four-year statute of limitations (Code Civ. Proc., § 337). For the reasons set forth below, we have concluded that the order must be reversed.

The pertinent underlying facts are not in dispute and were stipulated below as follows: In 1949, Crocker acquired all of the property here in dispute under a trust created by Minardi, the owners of the original un-

---

*Assigned by the Chairperson of the Judicial Council.

[1]The original notices of appeal were timely filed on October 23, 1978, from the trial court's memorandum decision of October 3, 1978. As the memorandum decision is not an appealable final judgment (4 Witkin, Cal. Procedure (2d ed. 1971) Judgment, § 5, p. 3185), this court subsequently granted the parties' motion to augment the record to include the judgment of dismissal entered on September 14, 1981, and deemed the premature notices of appeal as filed immediately after the entry of that judgment pursuant to California Rules of Court, rule 2(c).

divided interest. As trustee, Crocker operated the Miradero Water System from December 1969 to April 1974.

On December 30, 1969, Crocker, as trustee for Minardi and the Miradero Water System, entered into a letter agreement with Dale, which obligated Crocker to install, within six months, a "one-inch water line to supply water" for the parcel that Dale was purchasing through Maxwell Realty. In exchange, Dale agreed to quitclaim to Crocker a small parcel of property that then was the subject of a boundary dispute, as Dale's property line intersected a building on the adjacent parcel. Dale's quitclaim deed to Crocker was recorded on January 6, 1970. On September 25, 1970, Crocker wrote to Dale that arrangements had been made to install the one-inch water line "from our 8,000 gallon storage tank to the building site located on your lot." The pipeline and water meter were installed on Dale's property on or about September 30, 1970.

From December 1969 to April 1974, Dale's pipeline was connected to the Miradero Water System. Dale did not check the pipeline to determine if water was flowing through it to his property, but assumed there was an available water supply. Thus, during the time that Dale owned his parcel, he did not contact Crocker to complain about the lack of available water.

On September 1, 1972, Crocker wrote to Dale proposing "an impound account for capital improvements of the water system," set up a monthly charge for water, and also proposed that the users take over the operation of the water system. On two separate occasions between January 6, 1970, and April 14, 1974, Dale discussed the pipeline with Crocker but Crocker did not inform Dale that it would not be supplying water. Crocker also did not inform Dale about a lawsuit filed by the other users of the Miradero Water System against Crocker, or about the August 1974 compromise settlement thereof. Under the terms of the settlement, all of the users (except Dale) became the owners of the water system and specifically were relieved from Crocker's existing obligations to Dale.

On January 3, 1974, George C. Costa (Costa), through Watts, a licensed broker, purchased Dale's parcel. In December 1975, Watts informed Dale that the pipeline was not supplying any water to Costa.

The main action was commenced on August 13, 1976, by Robert Hoth and Amelia C. Hoth (Hoth), the owners of the parcel adjacent to Costa. Hoth's complaint against Crocker, Minardi, Dale, Costa and other defendants sought damages and other relief for the loss of lateral support caused by the subsidence of the Costa's property as a result of the lack of water and for fraud and misrepresentation. Costa filed a cross-complaint against Hoth, Watts, Dale, and Maxwell Realty alleging misrepresentations as to the water supply. On November 31, 1977, Dale filed a cross-complaint against Crocker for damages for breach of contract, or in the alternative, indemnity. On December 7, 1977, Watts filed a cross-complaint for equitable indemnity against Crocker, in the event that he was held liable to Costa. Crocker's answer to the Dale and Watts cross-complaints relied on the four-year statute of limitations of Code of Civil Procedure section 337.

The court bifurcated and first tried the statute of limitations issue as to the Dale and Watts cross-complaints. The only evidence before the court was Dale's testimony and the three letters from Crocker to Dale and Dale's agreement to purchase the property.

We may consider the trial court's memorandum opinion for the purpose of understanding and interpreting its order of dismissal. (Cf. *Wechsler* v. *Capitol Trailer Sales* (1963) 220 Cal.App.2d 252, 263 [33 Cal.Rptr. 680].) The court concluded that: (1) Crocker agreed only to supply the one-inch pipeline, not the water; (2) as the pipeline was installed within six months of December 30, 1969, the statute of limitations began to run on July 1, 1970, as there was no evidence of fraud or mistake.

Further, the court determined that Crocker's December 30, 1969, agreement "to install a 1″ water line to supply water to the building site" owned by Dale, was an agreement to supply a one-inch line and no more.

■ "'An appellate court is not bound by a construction of the contract based solely upon the terms of the written instrument without the aid of evidence [citations], where there is no conflict in the evidence [citations], or a determination has been made upon incompetent evidence [citation].' [Citations.]" (*Parsons* v. *Bristol Development Co.* (1965) 62 Cal.2d 861, 865-866 [44 Cal.Rptr. 767, 402 P.2d 839].)

As the question is one of law, we are free to adopt our own independent determination of just what the intent and reasonable expectations of the parties were at the time of executing the contract. (*Parsons* v. *Bristol Development Co., supra*, 62 Cal.2d 861.) ■ Viewed in context of the contemporaneous transaction whereby Dale quitclaimed a parcel of property to Crocker to resolve a boundary dispute in return for the waterline to supply water to Dale's building site, the reasonable expectations were that Crocker would supply both the line and the water.

Read most literally, the provision is patently ambiguous, as it can be read to mean that: (1) Crocker was to install only the waterline; (2) Crocker was to install the waterline and supply the water. The court ignored the basic rule that ambiguities are construed against the drafter of the agreement (Civ. Code, § 1654).

Further, given the ambiguity, the trial court should have considered the extrinsic evidence. (*Gribaldo, Jacobs, Jones & Associates* v. *Agrippina Versicherunges A.G.* (1970) 3 Cal.3d 434 [91 Cal.Rptr. 6, 476 P.2d 406], *City of Los Angeles* v. *Japan Air Lines Co., Ltd.* (1974) 41 Cal.App.3d 416 [116 Cal.Rptr. 69].) The court here ignored Crocker's letters of September 25, 1970, and September 1, 1972. The letter of September 25, 1970, written just prior to performance, indicated that the waterline would be installed from Crocker's 8,000 gallon tank to Dale's building site. The letter of September 1, 1972, referred to Crocker's operation of the water system, the increase in Dale's monthly payment for the reserve account and Crocker's proposal to turn the system over to its users. The court also ignored the stipulated fact that Crocker operated the Miradero Water System until April 1974. Thus, the only reasonable interpretation of the agreement, in the light of the uncontroverted evidence, was that Crocker was to supply both the waterline and the water.

■ ■ ■ Next, we turn to the trial court's conclusion that there was no evidence of fraud or misrepresentation.[2] ■ The uncontroverted evidence established that on two separate occasions between January 6, 1970, and April 4, 1974, Dale spoke with Crocker about the pipeline but was not told that Crocker was no longer operating the wa-

---

[2]The elements of fraud are: (1) misrepresentation; (2) knowledge of falsity; (3) intent to defraud, i.e., to induce reliance; (4) justifiable reliance; and (5) resulting damage. (*Harazim* v. *Lynam* (1968) 267 Cal.App.2d 127, 130 [72 Cal.Rptr. 670]; *Seeger* v. *Odell* (1941) 18 Cal.2d 409, 414 [115 P.2d 977, 136 A.L.R. 1291].)

ter system. Crocker stipulated that Dale had not been informed of the action instituted by the other users and the settlement which excluded Dale, but released the users from all obligations and promises previously made by Crocker to Dale. Dale did not discover the breach until December 1975. As the trial court recognized, ordinarily the statute of limitations commences to run at the time of the breach. (*Donahue* v. *United Artists Corp.* (1969) 2 Cal.App.3d 794 [83 Cal.Rptr. 131].) However, the statute of limitations may be tolled by fraud or mistake. (*Balfour, Guthrie & Co.* v. *Hansen* (1964) 227 Cal.App.2d 173 [38 Cal.Rptr. 525].) In *Balfour, supra*, the court noted: "[f]raudulent concealment of the facts is a good answer to the defense of the statute of limitations" (*id.*, at p. 189), and observed that fraud may include intentional misrepresentation and also negligent misrepresentation. (*Id.*, at p. 192.)

It is immaterial that Dale could have checked the pipeline to see if water was flowing through it and, thus, discover the breach. In *Balfour, Guthrie & Co.* v. *Hansen, supra*, 227 Cal.App.2d 173, the court quoted from *Vai* v. *Bank of America* (1961) 56 Cal.2d 329, 343 [15 Cal.Rptr. 71, 364 P.2d 247]: ""[w]here no duty is imposed by law upon a person to make inquiry, and where under the circumstances 'a prudent man' would not be put upon inquiry, the mere fact that means of knowledge are open to a plaintiff, and he has not availed himself of them, does not debar him from relief when thereafter he shall make actual discovery." [Citations.]'" (*Balfour, Guthrie & Co.* v. *Hansen, supra*, 227 Cal.App. 2d 173, 190.)

Here, since Crocker had operated the water system from 1969 to 1974, wrote to Dale about its problems in 1972 and referred to an increase in his monthly payments, failed to notify Dale that it would no longer be operating the system and also failed to notify Dale about the lawsuit and settlement, there were no circumstances to cause Dale to make any inquiries. Accordingly, the statute of limitations was tolled until his discovery of Crocker's breach in December 1975. As Dale's cross-complaint was filed in 1977, it was filed well within the four year limitations period of Code of Civil Procedure section 337 and therefore, not barred.

As to Watt's cross-complaint for equitable indemnity, *People* ex rel. *Dept. of Transportation* v. *Superior Court* (1980) 26 Cal.3d 744 [163 Cal.Rptr. 585, 608 P.2d 673], held that: "[a]s we shall explain, the governing authorities, both in California and throughout the coun-

try, uniformly hold that *a tort defendant's equitable indemnity action is separate and distinct from the plaintiff's tort action. The indemnity action*, unlike the plaintiff's claim, does not accrue for statute of limitations purposes when the original accident occurs, but instead *accrues at the time that the tort defendant pays a judgment* or settlement as to which he is entitled to indemnity." (*Id.*, at p. 748.) (Italics added.) Furthermore, "a tort defendant does not lose his right to seek equitable indemnity from another tortfeasor simply because the original plaintiff's action against the additional defendant may be barred by the statute of limitations." (*Ibid.*)

As Watts has not been held liable to Costa in damages under Costa's cross-complaint, Watts' claim for indemnity cannot be barred before he has incurred liability to Costa. Thus, Watt's cross-complaint was dismissed prematurely.

The order dismissing the Dale and Watts cross-complaints is reversed.

Rouse, Acting P. J., and Smith, J., concurred.