[S.F. No. 24429. May 19, 1983.]

FLORRIE H. MILLER, Plaintiff and Appellant, v.
BECHTEL CORPORATION et al., Defendants and Respondents.

**COUNSEL**

Donald Nemir for Plaintiff and Appellant.

Pillsbury, Madison & Sutro, Noble K. Gregory, Anthony P. Brown, Frank E. Sieglitz, Michael H. Salinsky, George K. Hartwick, Paul J. Sanner, Michael R. Sheehan, Patricia K. Gilmore, Bronson, Bronson & McKinnon, Richard C. Dinkelspiel, Dinkelspiel, Donovan & Reder and Dinkelspiel, Steefel & Levitt for Defendants and Respondents.

**OPINION**

**MOSK, J.**—In this action, plaintiff Florrie Miller, the former wife of defendant H. Eric Miller (Miller), seeks damages and an order setting aside a portion of a property settlement agreement and the decree of dissolution which approved the agreement, on the ground, inter alia, that Miller and other defendants misrepresented the value of certain stock owned by the community, and

that they were guilty of other acts of misconduct which led to her consent to the agreement.

The Millers were married in 1940. They separated in 1969. Following negotiations through their respective attorneys, the parties executed a marital settlement agreement on September 14, 1971. On December 17 of that year the superior court ordered an interlocutory decree of dissolution which approved the agreement, as amended on October 29, 1971. The final judgment of dissolution was entered on July 25, 1972.

Miller had been employed by Bechtel Corporation since 1956. Beginning in 1967, he purchased stock in Bechtel and two related corporations (hereinafter collectively referred to as Bechtel) pursuant to a stockholders' agreement which provided that the shares could not be sold, assigned, or transferred, without giving Bechtel the right to purchase them at a price stated in the agreement. The stated price could be increased with the concurrence of the holders of two-thirds of Bechtel's stock. This restriction applied specifically to transfers effected by marital property settlement contracts.

At the time the Millers signed the marital settlement agreement in September 1971, the value assigned in the stockholders' agreement to the Bechtel stock purchased by Miller over the years was $294,000. Following discussions among Ross E. Hamlin, plaintiff's attorney, Paul R. Haerle, Miller's attorney, and Willis S. Slusser, an officer of Bechtel, regarding the terms of the stockholders' agreement and the rights which Bechtel would exercise under it, plaintiff consented in the marital settlement agreement to relinquish her interest in the stock to Miller in exchange for $147,000, i.e., one-half of the $294,000 value set in the stockholders' agreement. The parties acknowledged in the marital settlement agreement that the securities were subject to an option by Bechtel to purchase them at the price set forth in the stockholders' agreement.

In January 1978, plaintiff filed a complaint containing nine causes of action. The first and ninth counts alleged that Miller, Hamlin, Haerle, Slusser, Bechtel and others[1] were guilty of intentional and negligent misrepresentations. The gravamen of these counts is that the market value of the stock was higher than the $294,000 attributed to it by defendants, and that if defendants had not made the misrepresentation, plaintiff would not have relinquished her interest for $147,000 but would have sought a share of the proceeds of the stock when Miller sold it.

---

[1]Joined as defendants in the action were Thelen, Marrin, Johnson & Bridges, the law firm in which Haerle was a partner; William H. Plageman, Jr., an attorney with the Thelen firm who performed services for Miller; and Hession, Creedon, Hamlin, Kelly, Hanson & Farbstein, the law firm in which plaintiff's own attorney, Hamlin, was a member.

According to the first count, defendants deliberately misrepresented the "aggregate value" of the Bechtel stock at $294,000, although they knew that it was worth more than $1 million in 1971, in order to induce plaintiff to relinquish her interest for less than its true worth. It was alleged that Miller sold the shares for over $2 million in 1977, and that plaintiff had no knowledge of the "true value" until February 1977. The ninth cause of action, which sounded in negligent misrepresentation, averred that defendants had no reasonable grounds for believing that the $294,000 value was correct, that this figure had no relationship to such factors as the assets and profits of Bechtel, and that defendants had no information regarding the true value of the stock when they told plaintiff that it was worth $294,000.[2] Plaintiff prayed for compensatory and punitive damages, as well as an order to set aside the portion of the marital settlement agreement and the dissolution decree which divided the community property. Defendants in their answers denied that they were guilty of misrepresentation and alleged that the action was barred by the statute of limitations and the doctrine of res judicata.

Defendants moved for summary judgment. For purpose of the motions, the parties stipulated that there was a triable issue of fact as to whether the value of Miller's stock on September 14, 1971, the date the marital settlement agreement was signed, was greater than the price attributed to it in the stockholders' agreement.

Defendants' affidavits in support of the motions declared that Haerle, Miller's attorney, represented to Hamlin, plaintiff's attorney, during the discussions which led to the agreement, that the Bechtel stock was worth $294,000 according to the stockholders' agreement. Slusser told Hamlin that if Miller attempted to transfer the stock to plaintiff in trust or otherwise, Bechtel would exercise its right under the stockholders' agreement to purchase the shares, in accordance with the provisions of that agreement.

Defendants' declarations further established that, following the signing of the agreement, but before the final judgment of dissolution was entered, plaintiff sought the advice of a family friend who was a stockbroker regarding the terms of the agreement. The broker examined it in detail and recommended various changes, including a suggestion that the proceeds of the Bechtel stock be placed in a previously created trust for the Miller children upon redemption, and that Miller hold only a life estate in the proceeds. Plaintiff transmitted the report to Hamlin and asked that he review it.

Shortly thereafter, she consulted another attorney, who reviewed the agreement with Hamlin to clarify certain provisions. Hamlin thereafter withdrew

---

[2]The remaining causes of action will be discussed *infra*.

from representation of plaintiff. Later in 1972, plaintiff's attorney wrote Miller's counsel a number of times regarding implementation and interpretation of various provisions of the agreement. In October, he requested a copy of the shareholders' agreement and information "as to the basis of valuation of the Bechtel shares." Plaintiff then sought the advice of a third attorney who, in February 1973, reiterated the request made in the October letter, and threatened to file suit to obtain the information if it was not disclosed voluntarily. Such an action was not filed and, so far as the record shows, the information was not provided and the request was not renewed.

In plaintiff's declaration in opposition to the motions for summary judgment, she stated that she could not ascertain the "true value" of the Bechtel stock until Miller redeemed it in 1977 because Bechtel was a "closed" corporation which "jealously guarded" its financial records.

The trial court granted the motions as to all defendants except Hamlin, plaintiff's attorney, and the law firm of which he was a member. Plaintiff appeals from the ensuing judgment.[3]

In a lengthy memorandum opinion, the trial court explained the reasons for its decision as follows: First, the representation of Bechtel, Slusser, the Thelen firm, Haerle, Plageman and Miller, that the Bechtel stock was worth $294,000 "pursuant to the shareholders' agreement" was accurate, and these defendants were not guilty of concealing the value of the stock; second, the decree of dissolution approving the property settlement agreement was res judicata, and the value of the shares for the purpose of the dissolution proceeding was conclusively determined by the final judgment in that proceeding.

Finally, the court concluded that plaintiff was barred by the statute of limitations from proceeding with the action. Section 337, subdivision 3, of the Code of Civil Procedure provides for a four-year period of limitations for actions for rescission of written contracts, and section 338, subdivision 4, sets forth a three-year limitation period for tort actions based on fraud or mistake. Both statutes provide that a cause of action for fraud or mistake does not accrue until the facts constituting the fraud or mistake are discovered by the aggrieved party. The trial court determined that plaintiff's first and ninth causes of action were barred even if the four-year limitation period of section 337, subdivision 3, were applied, because she had "constructive notice or presumed knowledge sufficient to put her on inquiry in 1971 and 1972 as to the value of the stock."

We agree with the trial court's determination that plaintiff is barred from pursuing her action against these defendants by the statute of limitations.

---

[3]The term "defendants" in later portions of this opinion will refer to all defendants except Hamlin and his law firm. The eighth cause of action was alleged only against them.

Our determination is made in the light of the well-established rules relating to the consideration of motions for summary judgment. ■ The purpose of such a motion is to determine if there are any triable issues of material fact, or whether the moving party is entitled to judgment as a matter of law. The affidavits in support of and in opposition to the motion must be made on personal knowledge and must set forth admissible evidence as to which the affiant is competent to testify. (Code Civ. Proc., § 437c.) ■ The affidavits of the moving party are strictly construed, while those of the party opposing the motion are liberally construed, and doubts as to the propriety of granting the motion must be resolved in favor of the party opposing the motion. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].)

■ The declarations establish that plaintiff knew at the time she entered into the marital settlement agreement that the value of the Bechtel stock was determined by the price attributed to it in the shareholders' agreement. She claims, however, that she was not aware that that agreement provided that the price was determined by a vote of the shareholders of the corporation rather than by some objective standard. While this may be correct, it is also uncontroverted that she did not inquire as to the method by which the value of the stock was determined before she signed the marital settlement agreement and that, although she made inquiry thereafter, she failed to pursue the matter.

In her declaration in opposition to the motions for summary judgment, plaintiff offered no explanation for her failure to make any inquiries in this regard before signing the marital settlement agreement. She did attempt, however, to excuse her omission by a statement that she would not have received a reply to such an inquiry because Bechtel was a "closed" corporation which "jealously guarded" its financial records.

There is nothing in the record to substantiate her claim that upon appropriate inquiry Bechtel would have refused to reveal the method of valuation.[4] And, because the statement in plaintiff's declaration regarding Bechtel's presumed reaction to her inquiry was not a fact within her personal knowledge, the trial court was not required to accept it as true for the purpose of passing on the motion for summary judgment. (Code Civ. Proc., § 437c.)

Plaintiff asserts, however, that she had no duty to make inquiry regarding the accuracy of the representations as to the value of the stock because Miller had

[4]While Hamlin's declaration in support of the motion for summary judgment asserts Haerle stated that any attempt to subpoena Bechtel records in order to "verify the terms of the stock purchase agreement and the purchase price fixed therein" would place Miller's job at risk, the failure to obtain such verification was irrelevant, as the trial court concluded, because the representations made by Haerle and Slusser as to the terms of the agreement were in fact accurate.

an obligation as a fiduciary to provide her with full and correct information as to their worth. (Citing *Vai* v. *Bank of America* (1961) 56 Cal.2d 329, 342 [15 Cal.Rptr. 71, 364 P.2d 247].)

Even assuming the correctness of this assertion, however, if she became aware of facts which would make a reasonably prudent person suspicious, she had a duty to investigate further, and she was charged with knowledge of matters which would have been revealed by such an investigation. (*Bedolla* v. *Logan & Frazer* (1975) 52 Cal.App.3d 118, 131 [125 Cal.Rptr. 59].)

The declarations establish without question that attorneys who represented plaintiff following Hamlin's withdrawal as her lawyer entertained serious doubts whether the value attributed to the stock in the property settlement agreement accurately reflected its "true value." They not only wrote Miller's lawyer on two separate occasions requesting a copy of the shareholders' agreement, but specifically sought information regarding the method used to establish a value for the shares, and threatened to file suit if the information sought was not forthcoming. The first inquiry was made before the final decree of dissolution was entered, and the second seven months thereafter, well within the period of limitations. Since plaintiff's representatives chose not to pursue their inquiry further despite their suspicions, she is charged with knowledge of facts which would have been revealed if she had pursued the investigation. As we conclude above, we cannot assume that such an inquiry would have been unavailing.

Moreover, although we do not suggest that a plaintiff in an action for fraud against a fiduciary is charged with knowledge which could have been gained by examining public records, in the present case, after plaintiff's suspicions had been aroused, she could have discovered, by consulting such records, that the value of the Bechtel stock had increased by 270 percent nine months after she signed the property settlement agreement, and one month before the final decree of dissolution was entered.[5] This information, which could have been obtained without the necessity for legal process, would at the very least have reinforced plaintiff's doubts whether the "true value" of the stock was as represented in the property settlement agreement.[6]

---

[5]Plaintiff states in her briefs on appeal that the files of the California Corporations Commissioner show that Bechtel filed an application to "adjust" the price of its stock to $135 a share on June 23, 1972, an increase of 270 percent over the value assigned to it in the marital settlement agreement.

[6]*Tresemer* v. *Barke* (1978) 86 Cal.App.3d 656, 665 [150 Cal.Rptr. 384, 12 A.L.R.4th 27], relied on by plaintiff, is not contrary to our conclusion. There, the plaintiff's complaint alleged facts which were sufficient to raise the issue whether she had exercised due diligence to discover the cause of her injury before the statute of limitations had expired, and the defendant's declaration in support of his motion for summary judgment did not contradict these allegations. By contrast, in the present case, the declarations filed in connection with the motions for summary judgment set forth facts which justify the trial court's conclusion that plaintiff was charged with knowledge of the matters upon which she now bases her claim.

Thus, the trial court was justified in concluding that plaintiff was charged with knowledge of the method employed for assigning a value to the stock in the shareholders' agreement, and in sustaining defendants' motions for summary judgment.

Plaintiff's remaining causes of action are also barred by the statute of limitations. The second, third and seventh causes of action, against all defendants, allege various acts of misrepresentation and concealment. Although plaintiff alleges that she did not become aware of some of these acts or omissions until 1977 or 1978, she makes no claim either in the complaint or her declaration that she could not, with reasonable diligence, have discovered the facts upon which these causes of action are based prior to the expiration of the limitation period.

■ The fourth, fifth and sixth causes of action are asserted only against Miller. They seek to set aside the portions of the marital settlement agreement and the decree of dissolution which divided the community property. The fourth alleges that plaintiff was "intimidated" by defendants into relinquishing her interest in the stock by threats that Miller would lose his job if she did not do so, and the sixth asserts that at the time she signed the agreement plaintiff was under great emotional strain and lacked the capacity to consent to its terms. These causes of action are barred as a matter of law. Plaintiff does not allege that either the effect of the alleged "intimidation" or her incapacity extended beyond the time she signed the agreement in September 1971. In fact, in the months following execution of the agreement, she signed a will to carry out its provisions, consulted two attorneys and a financial adviser concerning its terms and their implementation, and twice signed amendments to the agreement, the last time in October 1976.

The fifth cause of action states that plaintiff was mistaken as to the law and the facts in various respects. She makes no claim that she was unable to discover these mistakes within the limitation period, except as to the "true value" of the stock, and what we have said above makes it clear that plaintiff cannot escape the bar of the statute of limitations on this ground.

The judgment is affirmed.

Richardson, J., Broussard, J., Reynoso, J., and Rouse, J.,* concurred.

**BIRD, C. J.,** Concurring and Dissenting.—I respectfully dissent. I cannot agree with the majority that plaintiff's claims for fraud and misrepresentation, and for rescission of the marital settlement agreement on the basis of mistake, are barred by the statute of limitations.

---

*Assigned by the Chairperson of the Judicial Council.

All the parties agree that only one year prior to the filing of her complaint, plaintiff actually discovered that the true value of her ex-husband's stock may have greatly exceeded the value represented to her when she signed the marital settlement agreement. Despite this fact, the majority hold that these claims are barred by the statute of limitations because her attorneys purportedly developed "suspicions" about defendants' representations some five to six years before her complaint was filed. In reaching this conclusion, the majority must ignore several important facts and rules: (1) the obligation imposed by the fiduciary relationship of the parties; (2) the rule that a cause of action for fraud accrues upon the discovery by the aggrieved party of the facts constituting fraud; and (3) the "well-established rules relating to the consideration of motions for summary judgment."

Code of Civil Procedure sections 337, subdivision 3 and 338, subdivision 4 both provide that the statute of limitations for fraud or mistake does not begin to run until the facts constituting the fraud or mistake are discovered by the aggrieved party.[1] A plaintiff need not establish that she exercised due diligence to discover the facts within the limitations period unless she "is [under] a *duty to inquire* and the circumstances are such that the plaintiff is negligent in failing to inquire." (2 Witkin, Cal. Procedure (2d ed. 1970) Actions, § 340, p. 1182; accord *Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 437-438 [159 P.2d 958].) Where the plaintiff is under no such duty to inquire, the limitations period does not begin to run until the aggrieved party has actually discovered the facts constituting the fraud or mistake, even though the means for obtaining the information are available. (*Ibid.*)

Here, plaintiff had no duty to inquire about the accuracy of her ex-husband's representations concerning the value of the stock because a fiduciary relationship existed between them.

In *Vai* v. *Bank of America* (1961) 56 Cal.2d 329 [15 Cal.Rptr. 71, 364 P.2d 247], this court held that a fiduciary relationship between spouses is established when one spouse controls the community property. Here, defendant Miller controlled the Bechtel stock. "'As the manager of the community property the husband occupies a position of trust [citations], which is not terminated as to assets remaining in his hands when the spouses separate. It is part of his fiduciary duties to account to the wife for the community property when the spouses are negotiating a property settlement agreement.'" (*Vai, supra,* 56

---

[1]Code of Civil Procedure section 337, subdivision 3 provides a four-year period of limitation for actions for rescission of written contracts.

Section 338, subdivision 4 provides a three-year limitations period for tort actions based on fraud or mistake.

Cal.2d at p. 337, quoting *Jorgensen* v. *Jorgensen* (1948) 32 Cal.2d 13, 21 [193 P.2d 728].)[2]

This fiduciary duty places upon the spouse who controls the property the obligation to disclose not only the existence of community assets, but also any *"material facts affecting their value."* (*Boeseke* v. *Boeseke* (1974) 10 Cal.3d 844, 849 [112 Cal.Rptr. 401, 519 P.2d 161], italics added; accord *Vai, supra,* 56 Cal.2d at p. 342.) The husband's fiduciary duties continue as long as his control of the community property continues "notwithstanding the complete absence of confidence and trust, and the consequent termination of the confidential relationship." (*Vai, supra,* 56 Cal.2d at p. 338.)

In *Vai,* the wife sought rescission of a marital settlement agreement on the ground that her husband had concealed information material to the valuation of a parcel of vineyard property included in the settlement. Specifically, plaintiff's counsel was shown a financial statement showing the book value of the land to be $200 per acre. He was not told, however, that vineyard land immediately to the north of the property was sold by defendant only nine months previously for over $500 per acre. Nor did defendant reveal that prior to the execution of the property settlement agreement, he had arranged to sell the property for over $800 per acre. (*Vai, supra,* 56 Cal.2d at p. 340.) These facts were "material facts relating to the value of community assets." (*Id.,* at p. 342.) That the wife knew the vineyard property *existed* was irrelevant. The husband breached his fiduciary duty by failing to disclose material facts relevant to the property's *valuation.* (*Ibid.*)

The present case is strikingly similar to *Vai.* Here, plaintiff charges that her husband failed to reveal facts within his knowledge which were material to the valuation of the Bechtel stock. Plaintiff's counsel was told that the price was set by a shareholders' agreement. However, defendant Miller did not tell plaintiff or her attorney that the price contained in the agreement bore absolutely no

---

[2]Here, the property settlement agreement was executed in 1971. On January 1, 1975, Civil Code sections 5125 and 5127 became effective, permitting either spouse to manage and control community property. (Stats. 1974, ch. 1206, § 7, p. 2610.) Those sections do not apply retroactively to this case. (*In re Marriage of Coffin* (1976) 63 Cal.App.3d 139, 154 [133 Cal.Rptr. 583].) However, even if they were to apply, it does not appear that they would affect the fiduciary duty of the husband in this case. The pre-1975 cases placed the duty of full disclosure upon whichever spouse—husband or wife—had control over the community assets. When the wife was entrusted with control of the community property, "she likewise occupie[d] a position of trust." (*Jorgensen* v. *Jorgensen, supra,* 32 Cal.2d 13, 21; accord *Orlando* v. *Orlando* (1966) 243 Cal.App.2d 248, 253, fn. 7 [52 Cal.Rptr. 142].) Thus, the husband's fiduciary obligation was based not on his exclusive right to manage and control the community property, but on his actual control over it.

relationship to the value of the corporation. Surely such information is "material[ly] . . . relat[ed] to the value of [the] community asset[ ]." (*Ibid.*)[3]

Under *Vai,* then, defendant Miller owed a fiduciary duty to plaintiff to disclose fully and fairly material facts relating to the value of the community property over which he had control—i.e., the Bechtel stock. Under such circumstances, plaintiff had no duty to investigate the manner in which the stock's value was determined. Rather, she was entitled to rely on her husband's representations.[4]

Nevertheless the majority conclude that plaintiff had a duty to investigate because she was "aware of facts which would make a reasonably prudent person suspicious" of fraud. (Maj. opn., at p. 875, citing *Bedolla* v. *Logan & Frazer* (1975) 52 Cal.App.3d 118, 131 [125 Cal.Rptr. 59].) That conclusion is based on their finding that plaintiff's attorneys had "suspicions" about the valuation of the stock some five to six years before plaintiff actually discovered its true value. (Maj. opn., at p. 875.) However, the evidence equally supports the inference that plaintiff's attorneys were not at all "suspicious." After executing the marital settlement agreement, plaintiff consulted with several attorneys. One attorney wrote to Miller's counsel and requested a copy of the shareholders' agreement approximately one year after the negotiation of the property settlement agreement. A second attorney reiterated the request some four months later. Neither attorney ever received any of the requested information. These attorneys had only recently begun to serve as plaintiff's counsel. Their inquiries do not necessarily reveal "suspicions" of any kind. They merely reflect a degree of professional thoroughness expected of members of the legal profession who have been consulted for advice. Thus, it is clear that an entirely "innocent" inference may be drawn from the facts referred to by the majority.

Moreover, even if plaintiff's attorneys had the suspicions ascribed to them by the majority, such suspicions, by themselves, are insufficient to give rise to a

---

[3]This is not a case in which the defendant simply misrepresented the value of a community property asset. Rather, the defendant concealed information which was essential for plaintiff's own determination of the stock's true value.

[4]Further support for finding the existence of a fiduciary relationship between the parties at the time of the property settlement agreement may be found in Civil Code section 5103. That section establishes that a husband and wife stand in a fiduciary relationship with regard to contracts with one another. All contracts between spouses are subject "to the general rules which control the actions of persons occupying confidential relations with each other, as defined by Title 8 (commencing with Section 2215) of Part 4 of Division 3." Among the provisions of title 8 is the requirement that each person in whom confidence is reposed "is bound to act in the highest good faith toward his beneficiary, and may not obtain any advantage therein over the latter by the slightest misrepresentation, concealment, threat, or adverse pressure of any kind." (Civ. Code, § 2228.)

duty to investigate. "The statute [of limitations] commences to run only after one has *knowledge of facts* sufficient to make a reasonably prudent person suspicious of fraud, thus putting him on inquiry." (*Hobart* v. *Hobart Estate Co.* (1945) 26 Cal.2d 412, 437 [159 P.2d 958], italics added; accord *Bedolla* v. *Logan & Frazer* (1975) 52 Cal.App.3d 118, 130 [125 Cal.Rptr. 59].) The relevant consideration is not whether plaintiff had mere "suspicions," but whether plaintiff had knowledge of *facts* sufficient to make a reasonable person suspect fraud.

That the evidence may suggest that plaintiff's attorneys had doubts about the true value of the stock does not establish that their suspicions were based on an awareness of the requisite "facts." Indeed, the inquiries which plaintiff's attorneys did make were unavailing. No information was ever supplied by defendants. "A defrauded person . . . is not barred from maintaining an action merely because he commenced an investigation if it was incomplete or abandoned before discovery of the falsity, particularly if the defendant has a superior knowledge of the facts, or if it is difficult for the plaintiff to ascertain all the facts. . . ." (*Hobart, supra,* 26 Cal.2d at p. 435.)

A spouse should not be penalized for his or her attorneys' unavailing curiosity. Such a rule would tend to deter attorneys from engaging in the laudable practice of thoroughly investigating the history of a new client's pending legal affairs. And, it has the potential to render completely meaningless the well-established rule that a cause of action for fraud accrues upon the discovery by the aggrieved party of *facts* constituting fraud.

No doubt many divorcing couples are skeptical, to say the least, about whether their partners are being entirely straightforward and honest in the negotiation of a property settlement. However, that is not sufficient to create a duty of inquiry. Here, plaintiff should not be charged with constructive knowledge of facts which may have been revealed by an investigation merely because her attorneys had "suspicions"—unsupported by any facts—about representations which had earlier been made by defendants.

In addition, the knowledge that the price of the Bechtel shares was set by a shareholders' agreement was not sufficient to make a reasonably prudent person suspect that fraud had been committed. Defendants argue that a reasonable person would necessarily infer from this fact that the price of the stock was not based on the assets or earnings of the corporation. But, a contrary inference could even more readily be drawn. Most shareholder agreements set stock prices by reference to some form of objective criteria such as book value, market price, capitalizing earnings or independent appraisal. (See 2 O'Neal, Close Corporations (2d ed. 1971) §§ 7.24-7.24g, pp. 83-100.) As O'Neal notes, "the parties to a restrictive [shareholders' agreement] ordinarily prefer a

pricing method which results in a transfer price that approximates the value of the shares at the time of transfer." (*Id.*, at p. 90, fn. omitted.) Therefore, the fact that the price was set by the shareholders would more likely than not lead a reasonable person to believe that the price bore some relationship to the value of the corporate assets.

The majority appear to forget that the grant of a motion for summary judgment is being reviewed. The role of the trial court on a motion for summary judgment is simply to determine whether there are any triable issues of fact presented. (*Stationers Corp.* v. *Dun & Bradstreet, Inc.* (1965) 62 Cal.2d 412, 417 [42 Cal.Rptr. 449, 398 P.2d 785].) Affidavits in support of the motion are strictly construed. Affidavits in opposition are liberally construed. And, "doubts as to the propriety of granting the motion should be resolved in favor of the party opposing the motion." (*Ibid.*)

Summary judgment may not be granted where contradictory inferences may be drawn from the supporting declarations or affidavits. (Code Civ. Proc., § 437c, subd. (c); 4 Witkin, Cal. Procedure (2d ed. 1981 supp.) Proceedings Without Trial, § 196A, p. 63; *Brown* v. *City of Fremont* (1977) 75 Cal.App.3d 141, 145 [142 Cal.Rptr. 46].) Defendants' contention that plaintiff was aware of facts sufficient to put her on inquiry must be examined in light of this standard. "[W]hen the facts are susceptible of opposing inferences, whether 'a party has notice of "circumstances sufficient to put a prudent man upon inquiry as to a particular fact," [is itself a] question[ ] of fact to be determined by the jury or the trial court.'" (*Hobart, supra,* 26 Cal.2d at p. 440, quoting *Northwestern P. C. Co.* v. *Atlantic P. C. Co.* (1917) 174 Cal. 308, 312 [163 P. 47].)

In light of the unequivocal language of this court in *Northwestern P.C. Co.* and *Hobart,* it is difficult to understand how the majority can conclude that there are no triable issues in this case. The declarations establish that a triable issue exists as to whether plaintiff's attorneys suspected that fraud had occurred. In addition, even if such suspicions arose, it cannot be concluded as a matter of law that those doubts constituted facts sufficient to put a reasonable person on inquiry of fraud.

Finally, even if plaintiff had a duty to investigate further, I cannot agree with the majority that she breached that duty. An aggrieved party is required to exercise "*reasonable* diligence" to discover the facts. (*Bedolla* v. *Logan & Frazer, supra,* 52 Cal.App.3d at p. 131, italics omitted, citing *Moonie* v. *Lynch* (1967) 256 Cal.App.2d 361, 365-366 [64 Cal.Rptr. 55].)[5]

---

[5]Plaintiff asserted that she did not learn that $294,000 was not the actual value of her husband's stock until 1977. "This is the first time that there had been any indication to me that the $294,000 recited in the marital settlement agreement was not accurate. . . . [¶] Because the Bechtel corporations are closed corporations and jealously guard their financial records, I had

Here, the declarations indicate that Bechtel's method for determining the value of its stock was confidential information.[6] In addition, when plaintiff's attorney threatened to subpoena the information, he was advised that such a procedure might result in the termination of Mr. Miller's employment with Bechtel. Plaintiff was no doubt aware that it would not be in her best interests for her husband to lose his job since he would then be unable to provide spousal and child support. In light of this risk, it cannot be said that plaintiff's counsel was unreasonable in not pursuing his effort to subpoena, or otherwise obtain, Bechtel's records. On the contrary, plaintiff has at least raised a triable issue of fact concerning whether she could have discovered her husband's fraud through the exercise of reasonable diligence. Summary judgment was, therefore, improper.

The foregoing discussion applies to plaintiff's first and ninth causes of action. The majority hold these claims were barred by the statute of limitations on the theory that plaintiff failed to exercise reasonable diligence to discover the facts upon which those causes of action are based. In my view, plaintiff was under no duty of inquiry—either in the abstract or because she was aware of facts which would make a reasonable person suspicious.

The majority also conclude that plaintiff's second, third and seventh causes of action, alleging misrepresentation and concealment, are barred by the statute of limitations. Again, the majority uphold the grant of summary judgment on the ground that plaintiff "makes no claim . . . that she could not, with reasonable diligence, have discovered the facts upon which these causes of action are based prior to the expiration of the limitation period." (Maj. opn., at p. 876.) This reasoning fails for the same reasons set forth with respect to the first and ninth causes of action. Since plaintiff was under no duty of inquiry, her failure to allege that an inquiry would have been futile does not bar her claims.

I also find, contrary to the majority, that the fifth cause of action, in which plaintiff seeks to set aside the marital settlement agreement on the ground that she was mistaken as to the law and facts at the time the agreement was executed, is not barred by the statute of limitations. As previously noted, plaintiff's allegation that she was unaware of the true value of the stock until it was sold by her former husband in 1977, and the fact that she had no independent duty of inquiry, are sufficient to toll the statute of limitations.

---

no way of ascertaining the true value of the stock which defendant Miller and I owned in these corporations, until defendant Miller redeemed the stock in 1977."

[6]Paragraph 11 of the declaration of Miller's counsel in support of a motion for a protective order reads as follows: "11. It is a well-established policy and practice of Bechtel that details of its business affairs and of its relationship with its shareholders and of the business affairs of those parties for whom Bechtel performs work are not publicized or publicly discussed but are maintained as confidential information. The officers and managers of Bechtel insist upon adherence to this policy of confidentiality."

I agree with the majority that the fourth and sixth causes of action, asserted only against defendant Miller, are barred by the statute of limitations. Those causes of action are based on allegations of intimidation and incapacity at the time plaintiff entered into the marital settlement agreement. As the majority note, plaintiff does not allege that either the effect of the alleged intimidation or the emotional strain which allegedly resulted in her incapacity extended beyond the time she signed the agreement in September 1971.

Thus, I would hold that plaintiff's first, second, third, fifth, seventh and ninth causes of action are not barred by the statute of limitations.

The majority improperly deny plaintiff her day in court on the slender reed of the purported "suspicions" of her attorneys. In so doing, they distort the well-established rules relating to the consideration of motions for summary judgment and ignore the fiduciary relationship of the parties.

Accordingly, I respectfully dissent.

Kaus, J., concurred.

Appellant's petition for a rehearing was denied June 23, 1983. Bird, C. J., and Kaus, J., were of the opinion that the petition should be granted.