**Donald T. HOLLAND, Plaintiff,**

v.

**BANK OF AMERICA, Prudential Insurance Company of America, Robert R. Wolford, and R.P. Bromley, et al., Defendants.**

Civ. No. 86–1023–E.

United States District Court,
S.D. California.

June 4, 1987.

Earl T. Durham, San Diego, Cal., for plaintiff.

Howard C. Hay, Patrick J. Grady, Julie P. Moore, Paul, Hastings, Janofsky & Walker, Costa Mesa, Cal., David L. Bacon, Adams, Duque & Hazeltine, Los Angeles, Cal., for defendants.

## MEMORANDUM DECISION

ENRIGHT, District Judge.

### BACKGROUND

Bank of America hired plaintiff Donald Holland in October 1955. Holland alleges that he was hired pursuant to a written contract, although the written contract has not been produced. The complaint alleges that the written contract expressly or impliedly guaranteed (1) permanent employment, (2) job security, (3) entitlement to promotions and salary increases, and (4) good faith and fair dealing. (First Amended Complaint at ¶ 20). However, Holland testified in his deposition that he could not recall any specific provisions from the written document that he allegedly signed in 1955. (Joint Record at 133). He was also unable to recall any oral representations concerning his employment made by Bank of America in 1955. (JR at 134).

Holland's career began as a bank teller. But he gained several promotions, and in April 1974, he was designated manager for the University-Highlands branch of Bank of America.

Roughly three years later, in July 1977, Bank of America informed Holland that they were "extremely concerned" about "both the employee morale and operating efficiency" of the University-Highlands branch. The letter warned Holland that he must increase his leadership. (JR at 97).

The next year, in July 1978, an Employee Relations Review of the University-Highlands branch criticized Holland's performance and recommended reassignment. The review stated that Holland did "not have the respect or the support from a good number of his subordinates." (JR at 98-100).

On August 6, 1978, Steve Pillar met with Holland to discuss the Employee Relations Review. During Mr. Pillar's survey of the numerous criticisms, Holland reacted defensively. At the conclusion of the meeting, Mr. Pillar explained that Bank of America would not take any action immediately but the officer and staff morale would be reassessed in 90 days. Holland was also warned that unless there was "sufficient improvement ... appropriate action would immediately be taken." (JR at 100-02).

An Employee Assistance Follow Up was performed on December 12, 1978. Seven employees were interviewed, which resulted in five specific criticisms of Holland's performance: (1) hesitation in making decisions, (2) apparent lack of knowledge, (3) limited business development, (4) poor customer relations, and (5) lack of employee relations. The report concluded that Holland should be reassigned "to a lateral position as soon as possible." (JR at 103-04).

Donald Asper met with Holland on January 12, 1979. Holland was advised that he would be assigned to the Chula Vista branch, on 90–day probation, with a $125 salary decrease, and a demotion of one grade level. The memo recounting this meeting also states that Holland reacted with excuses and refused to believe that there were problems with his branch. (JR at 106).

Holland was initially reassigned to the Chula Vista branch as a loan officer. Apparently in April 1979, he was transferred to the La Mesa branch as a Financial Services Officer. Holland's former supervisors at the La Mesa branch, Robert Wolford and R.P. Bromley, are codefendants.

Wolford and Bromley evaluated Holland's performance at the La Mesa branch in March 1980. The evaluation indicated that Holland's services were generally satisfactory and he received a medium rating. (JR at 107–08).

In March 1981, Wolford and Bromley evaluated Holland again. This evaluation found Holland's job performance unacceptable. Holland's supervisors concluded that he did not meet major job requirements, that he was unable to command responsibility, and that there were poor customer and employee relations. He received the second to the lowest performance rating. (JR at 109–10).

Wolford and Bromley never met with Holland to discuss the March 1981 evaluation, and apparently the evaluation was not revealed to Holland until this litigation. The reason for failing to meet with Holland was that on Friday, March 27, 1981, Holland became emotionally upset and left his job. He returned on Monday, March 30, 1981. Wolford and Bromley conversed with Holland, and Holland stated that he had a doctor's appointment. Wolford and Bromley suggested the possibility of a medical leave of absence. (JR at 111).

On Wednesday, April 1, 1981, Holland telephoned Wolford and stated that his doctor recommended a six month medical leave. (JR at 111).

Holland was on a paid leave of absence from April 1981 to January 1982. In January 1982, Holland was assigned to the Campo–Conrad branch of Bank of America. According to his deposition, Holland realized shortly after his return in January 1982 that he would not be restored to his former position in the La Mesa branch or to his position as bank manager. (JR at 154–55). Instead of holding an assigned position, Holland was designated "Staff Available" and worked in several different positions at the Campo–Conrad branch between January 1982 and April 1984.

In April 1984, Doris Ward and Mr. Wolford offered Holland a position as a financial services officer. Holland testified that it was a good job, but that he did not consider it to be a promotion. (JR. at 155).

Holland declined the position and commenced another medical leave. He has been on medical leave since April 1984. He received medical pay and disability payments until July 1985, and since then he has been on unpaid leave. Thus, Holland is currently an employee on unpaid medical leave. Bank of America has never terminated Holland's employment and he may be reinstated whenever he becomes medically able.

On March 26, 1986, Holland filed suit against Bank of America and Messrs. Wolford and Bromley in San Diego County Superior Court. The complaint contains six state law claims: (1) breach of the implied covenant of good faith and fair dealing; (2) breach of contract; (3) intentional misrepresentation; (4) negligent misrepresentation; (5) intentional interference with contract; and (6) infliction of emotional distress.

In addition, plaintiff alleges in Counts 7 and 8 that the Bank of America violated the Employee Retirement Income Security Act of 1974 (hereinafter ERISA), 29 U.S.C. § 1001 *et seq.* Based on these federal causes of action, defendants timely removed the complaint to this court. The six state law claims were removed based on pendent jurisdiction.

The allegations in Counts 1 and 2 that Bank of America breached implied covenants and alleged written and oral con-

tracts are premised on (1) Holland's demotion in 1979, (2) the Bank of America's failure to restore him to branch manager at the end of the probationary period in April 1979, (3) his assignment to the La Mesa branch as "Staff Available" in September 1979, and (4) the failure to return Holland to his former job after his medical leave expired in January 1982.

The claims for negligent and intentional misrepresentation in Counts 3 and 4 concern (1) Bank of America's alleged statements in 1955 that Holland would have job security and promotions, (2) statements in 1979 that Holland would return to branch manager after probation, (3) statements in 1981 by the Bank and by Wolford and Bromley that Holland's job would be waiting after his medical leave, and (4) statements by the Bank throughout 1982 to 1984 about Holland's employment.

Count 5 alleges interference with contract and relates only to Wolford and Bromley. Holland contends that their activities and statements in 1981 destroyed his contract with Bank of America.

Finally, the claims in Count 6 for emotional distress relate to both the Bank of America and Wolford and Bromley and cover all of the events described above.

## DISCUSSION

Bank of America now moves to dismiss Counts 1–6 based alternatively on (1) expiration of the statute of limitations, and (2) failure of Holland to produce proof concerning essential elements of his claims. Bank of America also moves to dismiss Counts 7 and 8 because ERISA requires suit against either the Plan or a fiduciary; the Bank is neither.

Wolford and Bromley also move to dismiss all four counts against them based on expiration of the statute of limitations and for failure of Holland to produce proof of essential elements of the claim.

## APPLICABLE STANDARD

Fed.R.Civ.P. 56(c) provides that

[t]he judgment sought shall be entered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law.

The Supreme Court recently clarified that under Rule 56(c) the nonmoving party is obligated to provide proof concerning the essential elements of the claim. *Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 2553, 91 L.Ed.2d 265 (1986). The Court reasoned that "a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Id.* Thus, the moving party "bears the initial burden of informing the district court of the basis for its motions," *id.,* but the nonmoving party must then "present significant probative evidence tending to support its claim or defense." *Richards v. Neilsen Freight Lines,* 810 F.2d 898, 902 (9th Cir.1987). In addition, Rule 56(c) requires the nonmoving party to present evidence substantiating a "genuine" issue of material fact. Thus, the nonmoving party's "argument is measured by the underlying theory." *Id. See also Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 1356, 89 L.Ed.2d 538 (1986), *cert. denied,* ——— U.S. ———, 107 S.Ct. 1955, 95 L.Ed.2d 527 (1987) (if factual *context* renders the nonmoving party's claim implausible, more persuasive evidence is required).

■ Rule 56 does not require the moving party to present affidavits or other similar material *negating* the claim. *See generally Celotex Corp.,* 106 S.Ct. at 2553. However, when the moving party supports the motion for summary judgment with affidavits, the opposing party may not rest "upon the mere allegations or denials of his pleading." Fed.R.Civ.P. 56(e). The nonmoving party must submit affidavits or specific evidence in opposition.

## STATUTE OF LIMITATIONS

The various claims presented in Counts 1–6 are covered by four different limitations periods. Generally, the statute of

limitations begins to run at the time of the breach. *See Watts v. Crocker–Citizens National Bank*, 132 Cal.App.3d 516, 523, 183 Cal.Rptr. 304 (1982).

■ Counts 1 and 2 allege breach of implied covenants and express contract. And, Holland contends that his employment was pursuant to both written and oral contract.

Claims under written contracts must be filed within four years of the alleged breach. Cal.Civ.Proc.Code § 337. *Donahue v. United Artists Corp.*, 2 Cal.App.3d 794, 83 Cal.Rptr. 131 (1969). Holland filed his complaint on March 26, 1986. Thus, any breach that occurred prior to March 26, 1982 is barred by the statute.

Claims under oral contracts must be filed within two years of the alleged breach. Cal.Civ.Proc.Code § 339. Breaches occurring prior to March 26, 1984 are, therefore, barred.

Holland was demoted in January 1979. He was moved to the La Mesa branch in September 1979. He went on a medical leave in April 1981, and returned to find himself on "Staff Available Status" on January 2, 1982. It would, therefore, appear that any and all of the alleged breaches— of both implied covenants and express contract—occurred prior to March 26, 1982. Specifically, Bank of America presented Holland's deposition testimony that he was aware in January 1982 that he would not be restored to his former position. (JR at 154). Thus, Holland's contract claims in Counts 1 and 2 are barred by the applicable two and four year statutes.

■ Counts 3 and 4 allege intentional and negligent misrepresentation. Both of these claims are species of fraud, which are governed by the three year statute of limitations under Cal.Civ.Proc.Code § 338(4). Accordingly, any alleged misrepresentations prior to March 26, 1983 are barred. Bank of America presented evidence demonstrating the absence of any alleged misrepresentations after January 1982, and Holland has not submitted any evidence of subsequent misrepresentations. Thus, these claims are also barred. The preclu-

sion of Counts 3 and 4 applies to both the Bank of America and to Wolford and Bromley.

Count 5, against Wolford and Bromley, is also a claim under an oral contract, and the two year statute in Cal.Civ.Proc.Code § 339 applies. The interference with Holland's contract must have occurred after March 26, 1984. It is clear from the evidence that Holland did not have any contact with defendants Wolford and Bromley after April 1981. Holland has not presented evidence to the contrary and the claim is outside of the applicable limitations period.

■ Finally, Count 6 alleges emotional distress. This claim is apparently governed by Cal.Civ.Proc.Code § 340(3), with a one year statute of limitations. Holland's emotional distress is only actionable if it arose after March 26, 1985. Holland began his second period of medical leave in 1984, and there is no evidence indicating that later actions caused emotional distress. Accordingly, Count 6 is also barred by the statute of limitations.

■ Holland argues that the Bank of America fraudulently concealed the facts giving rise to plaintiff's various claims until July 25, 1985—the day after Holland was informed that his disability was terminated. Fraudulent concealment tolls the statute of limitations. *Watts*, 132 Cal. App.3d at 523, 183 Cal.Rptr. 304. *See also Balfour, Guthrie & Co. v. Hansen*, 227 Cal.App.2d 173, 38 Cal.Rptr. 525 (1964). In addition, Holland observes that he is not under any duty to inquire into the facts.

No evidence was presented in support of this argument. Holland relies solely on allegations in the complaint. He states:

Between January 12, 1979 and April 26, 1984, Defendant, B of A, falsely represented ... that: Plaintiff would be returning to his position as Bank Manager; Plaintiff would be returned to his Bank Manager salary; Plaintiff would not be transferred; Plaintiff would not be denied any of the benefits he would be entitled to (Cplt. ¶ 49).

Following this explanation, Holland asserts that he did not discover the fraudu-

lent concealment and the facts giving rise to his claims until July 1985. Thus, Holland implies that there was active concealment during the two years after he returned from medical leave in 1982, and that while on medical leave from April 1984 to July 1985, he did not discover the fraud. There is, however, a complete absence of evidence supporting such allegations.

Holland's argument that he is not under a duty to inquire is also without merit in the factual context of this case. In *Miller v. Bechtel Corp.*, 33 Cal.3d 868, 191 Cal. Rptr. 619, 663 P.2d 177 (1983), the California Supreme Court considered whether the plaintiff was under a duty to inquire into facts that would reveal the basis of a claim. The court stated:

> Even assuming the correctness of this assertion, however, if she became aware of facts which would make a reasonably prudent person suspicious, she had a duty to investigate further, and she was charged with knowledge of matters which would have been revealed by such an investigation.

*Id.* at 875, 191 Cal.Rptr. 619, 663 P.2d 177. *Accord Watts*, 132 Cal.App.3d at 523, 183 Cal.Rptr. 304.

Given the events of 1979, 1981 and Holland's return in 1982, a reasonably prudent person would become suspicious about the prospects of reinstatement as Bank Manager. Thus, Holland should be charged with knowledge of the facts.

Holland's claim that his demotion in 1979, his transfer in 1981, and the failure of the Bank of America to return him to his former status after January 2, 1982 are foreclosed by expiration of the relevant statutes of limitation. Judgment must be entered in favor of the Bank of America on Counts 1–4 and 6, and in favor of Wolford and Bromley on Counts 3–6.

## FAILURE TO PROVE ESSENTIAL ELEMENTS

 First, Bank of America argues that Holland cannot pursue either express or implied employment claims, or associated misrepresentation or emotional distress claims, because Holland was *necessarily* an employee at will. Cal.Labor Code § 2922 provides that an employee at will may be terminated at any time without cause.[1]

The National Bank Act, 12 U.S.C. § 24 (Fifth), states that the bank has the power

> [t]o elect or appoint directors, and by its board of directors to appoint a president, vice president, cashier, and other officers, define their duties, require bonds of them and fix the penalty thereof, *dismiss such officers or any of them at pleasure*, and appoint others to fill their places.

Bank of America contends that this statute establishes that a banking officer—such as branch manager—can be dismissed at will. The Federal Reserve Act, 12 U.S. C. § 341 (Fifth), and the Federal Home Loan Bank Act, contain similar provisions.

Holland argues that section 24(Fifth) does not apply and relies on a case holding that a branch manager was not a bank officer. *See Wiskotoni v. Michigan National Bank–West*, 716 F.2d 378 (6th Cir. 1983). Second, Holland argues that the Act does not apply because he was not terminated directly by the Board of Directors.

However, as the Bank of America notes, positions are not definitionally within the Act; it depends on whether a person within a bank's particular corporate structure is considered an officer. Bank of America then points to Holland's deposition testimony that prior to 1979, he was a "bank officer" and vice president. Second, Bank of America contends that the Act applies even though a delegatee of the Board of Directors carries out the appointments and dismissals.

The Bank's position is meritorious. Holland considered himself to be a bank officer, and officers can be dismissed at the pleasure of the bank. Certainly, if the

---

1. Initially it should be noted that Holland has not even been terminated; he objects instead to demotion and failure to promote.

officer can be dismissed "at pleasure," he can be demoted or transferred without a showing of good cause. Thus, section 24(Fifth) of the National Bank Act precludes all of Holland's state law claims that arise out of his assertion that he was improperly demoted from branch manager.

■ Second, the Bank of America asserts that Counts 1 and 2, for breach of express and implied employment contract, fail because (1) Holland has not produced any evidence of a contractual provision that the Bank could not demote him at will, and (2) the Bank has produced evidence that there was good cause.

General employment in California is terminable at will absent an express provision of employment for a definite term. Cal.Labor Code § 2922. The provision of employment for a definite term will be implied in certain relationships if it is established over a long term and the employer has written procedures that apply to all employees. *See Pugh v. See's Candies, Inc.*, 116 Cal. App.3d 311, 171 Cal.Rptr. 917 (1981).

Holland has not been terminated. Further, he has not produced any evidence of an express contract for a definite term. However, he was employed by the Bank of America for thirty years. Nevertheless, Holland has not produced any written procedures that would bar demotion, nor has he shown that the Bank did not follow established procedures in this case.

In addition, the Bank of America produced substantial evidence that Holland was demoted for good cause. The evaluations and reviews consistently chronicle Holland's poor performance. And, Holland has not submitted any evidence suggesting that the reviews and evaluations were pretextual. Thus, Holland's arguments to the contrary are completely unavailing and judgment must be entered in favor of defendants on the claims that arise out of the employment relationship.

■ Third, the Bank of America asserts that Holland failed to present proof of the elements of a claim for intentional or negligent misrepresentation.

For intentional misrepresentation, Holland must prove (1) misrepresentation, (2) knowledge of falsity, (3) intent to defraud, i.e., to induce reliance, (4) justifiable reliance, and (5) resulting damage. *Watts*, 132 Cal.App.3d at 522 n. 2, 183 Cal.Rptr. 304. Negligent misrepresentation involves the same elements absent intent. Instead, the plaintiff must demonstrate that the representation was made with no reasonable ground for believing it to be true.

Based on the evidence presented in this motion, Holland has not proven that either the Bank or that Wolford and Bromley had the requisite intent to defraud, or that they were without any reasonable ground to believe that they were telling him the truth. Rather, all of the evidence demonstrates that the Bank of America was fair and tried to accommodate Holland. Thus, there is a complete failure of proof of the requisite intent or negligence for a claim of misrepresentation.

■ Finally, the Bank of America argues that Holland's claim for emotional distress is barred (1) by the Workers' Compensation Act, and (2) because Holland has not offered proof of outrageous conduct. It is unnecessary for this court to address the first ground—Workers' Compensation preemption—because the second ground is meritorious.

A claim for intentional infliction of emotional distress requires proof of (1) outrageous conduct, (2) intention to cause or reckless disregard that causes emotional distress, (3) severe emotional suffering, and (4) actual and proximate causation of the emotional distress. *See Kiseskey v. Carpenters' Trust Fund*, 144 Cal.App.3d 222, 229, 192 Cal.Rptr. 492 (1983).

Holland has not presented proof that the Bank acted outrageously. Outrageous conduct has been defined as "so outrageous that no person in a civilized society should be required to bear it." *Soto v. Royal Globe Insurance Co.*, 184 Cal.App.3d 420, 430, 229 Cal.Rptr. 192 (1986).

Thus, the Bank of America and Wolford and Bromley are entitled to summary judgment on Count 6.

**ERISA**

 Bank of America is not a proper party to a suit under the Employment Retirement Income Security Act, 29 U.S.C. §§ 1001 *et seq.* (hereinafter ERISA).

In *Gelardi v. Pertec Computer Corp.,* 761 F.2d 1323, 1324–25 (9th Cir.1985), the court stated:

> The only causes of action [plaintiff] has are those provided by ERISA. 29 U.S.C. § 1144(a). ERISA permits suits to recover benefits only against the Plan as an entity, *id.* §§ 1132(a)(1)(B); 1132(d), and suits for breach of fiduciary duty only against the fiduciary, *id.* §§ 1109(a); 1105(a); *see also Thornton v. Evans,* 692 F.2d 1064, 1077 (7th Cir.1982).

Thus, Holland may only bring suit against the ERISA Plan itself, or the fiduciary of the Plan. The Bank is neither. In *Gelardi,* the court further explained:

> ERISA defines a fiduciary of a Plan as anyone who 'exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets ... [or] has discretionary authority or discretionary responsibility in the administration of such plan.' 29 U.S. C. 1002(21)(A)....
>
> Once [defendant] appointed the Plan Administrator and gave him control over the Plan, [defendant] was no longer a fiduciary because it retained no discretionary control over the disposition of claims.

*Id.* at 1325. *See also Sommers Drug Stores Company Employee Profit Sharing Trust v. Corrigan Enterprises, Inc.,* 793 F.2d 1456, 1459–60 (5th Cir.1986), *cert. denied,* —— U.S. ——, 107 S.Ct. 1298, 94 L.Ed.2d 154 (1987).

The Bank of America filed declarations stating that the Employee Benefits Administrative Committee was appointed as the Plan fiduciary, and that it has sole discretionary power over the management of the Plan. Holland's complaint does not name either the Plan or the Employee Benefits Administrative Committee as defendants.

In opposition, Holland asserts that the Bank of America retained control over the Plan fiduciary because three members of the Employee Benefits Administrative Committee are officers of the Bank and were appointed at the pleasure of the Board of Directors.

Holland's argument, however, does not render the Bank liable for the administration of the Plan; the Bank is only liable "to the extent" that it exercises control. In *Sommers Drug Stores,* the Fifth Circuit summarized

> [f]or example, if an employer and its board of directors have no power with respect to a plan other than to appoint the plan administrator and the trustees, then their fiduciary duty extends only to those functions. [Citing *Gelardi.*]

*Id.* at 1460.

Holland is not claiming that the Bank of America is liable because it improperly appointed fiduciaries. The complaint, instead, alleges that Holland's disability was improperly terminated. That claim is cognizable against the Plan and the fiduciary—the Employee Benefits Administrative Committee.

Both parties brief whether Holland's disability was improperly terminated. Essentially, the Bank of America states that the Plan provided for continuing disability for mental disorders if the employee is institutionalized. Holland requested continued benefits, but refused to be institutionalized. The court finds that it is unnecessary to address these arguments because the Bank is not the proper party.

## CONCLUSION

Upon due consideration of the parties' memoranda and exhibits, the arguments advanced at hearing and for the reasons set forth herein, this court hereby grants the motion for summary judgment in favor of the Bank of America, as to all claims against it, and in favor of Wolford and Bromley, as to all claims against them individually.