Filed 8/16/18; Opinion following order vacating prior opinion

**CERTIFIED FOR PUBLICATION**


IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION ONE


| | |
|---|---|
| RON HACKER, as Trustee, etc., | B278537 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC610795) |
| v. | |
| HOMEWARD RESIDENTIAL, INC., et al., | |
| Defendants and Respondents. | |


APPEAL from a judgment of the Superior Court of Los Angeles County, Teresa A. Beaudet, Judge. Reversed with directions.

Law Office of Richard L. Antognini and Richard L. Antognini for Plaintiff and Appellant.

Wright, Finlay & Zak, Jonathan D. Fink and Charles C. McKenna for Defendants and Respondents Homeward Residential, Inc., Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2006-OPT 3, Asset-Backed Certificates, Series 2006-OPT 3, Western Progressive, LLC, Ocwen Loan Servicing, LLC, Wells Fargo Bank, N.A., as

Trustee for Option One Mortgage Loan Trust 2006-2, Power Default Services, Inc., Brandy Berns, and Vicki Pospisil.

Jeffer Mangels Butler & Mitchell, Michael J. Hassen and Christopher H. Doyle for Defendant and Respondent Sand Canyon Corporation.

_____

Ron Hacker (Hacker), as successor trustee to the 1713 Stearns LaVerne Family Trust (Stearns), sued Homeward Residential, Inc., (Homeward) formerly known as American Home Mortgage Servicing, Inc. (AHMSI); Sand Canyon Corporation, formerly known as Option One Mortgage Corporation (Sand Canyon); Western Progressive, LLC (Western Progressive); Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2006-OPT 3, Asset-Backed Certificates, Series 2006-OPT 3 (Deutsche Bank); Ocwen Loan Servicing, LLC (Ocwen); Linda Greene; Brandy Berns; DOC X; Larraine Brown; Vicki Pospisil; Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2006-2 (Wells Fargo); Power Default Services, Inc. (Power Default); T.D. Service Company; AHMSI Default Services; and DOES 10 through 100 for claims arising from an allegedly void assignment of the deed of trust (DOT) on real property located at 1713-1717 Stearns Drive in Los Angeles, California (the property), and a failed short sale agreement.  The trial court sustained the demurrer by Homeward, Deutsche Bank, Western Progressive, Ocwen, Wells Fargo, Power Default, Brandy Berns, and Vicki Pospisil to all causes of action; and the court sustained the demurrer by Sand Canyon to the third through eighth causes of action.

The trial court also denied Hacker's request for leave to amend.  On appeal, he contends he can amend his pleading to

2

allege causes of action for wrongful foreclosure, fraud, slander of title, declaratory relief, unfair business practices, and cancellation of instruments against Homeward, Deutsche Bank, Western Progressive, Ocwen, Wells Fargo, Power Default, Brandy Berns, Vicki Pospisil, and Sand Canyon.[1]

We find that the trial court abused its discretion in denying leave to amend. We therefore reverse.

## FACTUAL SUMMARY

In 2006, Marcia Chaissions (Chaissions) obtained an $875,000 loan from Option One Mortgage Corporation (Option One). The loan was secured by a deed of trust against the property, which she acquired on February 2, 2006. On June 1, 2006, Option One transferred the loan to the Option One Mortgage Loan Trust 2006-2 (Option One Trust), a securitized investment trust, pursuant to a pooling and service agreement (PSA), under which Wells Fargo functioned as trustee and Option One as master servicer.

In December of 2007, Option One stopped originating new mortgage loans but continued to service its extant loans. On April 30, 2008, pursuant to a purchase and sale agreement dated March 17, 2008, Option One legally changed its name to Sand Canyon and sold its mortgage servicing portfolio to AHMSI.

On August 21, 2008, AHMSI assigned the DOT to Deutsche Bank as trustee for the certificate holders of the Soundview Home Loan Trust (Soundview Trust). On July 23, 2008, AHMSI

---

[1] Sand Canyon filed a reply brief, and the remaining respondents filed a separate reply brief. For the purpose of brevity, we refer to the remaining respondents as Defendants.

3

Default Services, Inc. was named as the trustee on the DOT and, on July 31, 2009, Power Default became the trustee on the DOT.

Chaissions defaulted on the loan and T.D. Service Company recorded a notice of default on October 9, 2009. The notice reflects that T.D. Service Company recorded the instrument "as authorized agent for the beneficiary" and directed the borrower (Chaissions) to contact Deutsche Bank, as trustee for the Soundview Trust, care of AHMSI, if she wished to arrange payment to prevent foreclosure. T.D. Service Company recorded notices of trustee's sale on January 11, 2010, June 20, 2011, and January 12, 2012.[2]

On May 29, 2012, AHMSI's name was changed to Homeward Residential, Inc. On August 8, 2012, Marcia and Dennis Chaissions (collectively, Chaissionses),[3] Homeward, and Stearns entered into a short sale agreement whereby Stearns would purchase the property and Homeward would release the loan. At the time, Estrelita Lane was the Stearns trustee and she signed the agreement. The terms of the agreement required the Chaissionses to deliver free and clear title to the property before August 31, 2012. The agreement did not close because the title company advised Stearns and the Chaissionses that there were "questionable title documents" from the August 21, 2008 assignment and the subsequent substitutions of trustee, notice of default, and notices of trustee's sales.

---

[2] The record is silent as to the why these trustee's sales either never took place or never resulted in a sale of the property.

[3] The record is silent as to how and when, but at some point Marcia Chaissions's son, Dennis, acquired an interest in the property.

4

On October 16, 2012, Lane filed a complaint against the Chaissionses, AHMSI, Homeward, Deutsche Bank and others. In her second amended complaint, she alleged multiple causes of action stemming from the failed short sale agreement, which included challenges to the August 21, 2008 assignment. On November 20, 2014, the Chaissionses entered into an out-of-court settlement agreement with Mark Meador, who had become the successor trustee to Stearns. Under the agreement, Meador would dismiss the entire action once the Chaissionses vacated the property and transferred it to Stearns via a grant deed. On January 29, 2015, the Chaissionses signed a grant deed, which granted "any and all of their interest" in the property to Meador, as trustee for Stearns. On December 18, 2015, Meador withdrew the complaint and the action was dismissed without prejudice.

On February 12, 2015, Western Progressive was named as trustee on the DOT. On August 10, 2015, Western Progressive recorded a notice of default and election to sell under deed of trust, directing the borrower to contact Deutsche Bank, as trustee for the Soundview Trust, if the borrower wished to arrange for payment in order to avoid foreclosure. Western Progressive recorded a notice of trustee's sale on January 19, 2016.

The Soundview Trust acquired the property at a foreclosure sale on July 6, 2016; Western Progressive recorded the trustee's deed upon sale on July 13, 2016 at 8:00 a.m. Hacker's grant deed was recorded shortly thereafter on July 13, 2016; the record does not indicate who requested the recording.

**TRIAL COURT PROCEEDINGS**

On February 19, 2016, Hacker filed a complaint against AHMSI, Sand Canyon, Homeward, Western Progressive, Deutsche Bank, Ocwen, Linda Green, Brandy Berns, and Doc X.

5

On April 4, 2016, Hacker filed a first amended complaint (FAC), adding Larraine Brown, Vicki Pospisil, Wells Fargo Bank, Power Default, T.D. Service Company, and AHMSI Default Services as defendants. The FAC alleged causes of action for: (1) breach of written contracts; (2) breach of the covenant of good faith and fair dealing; (3) wrongful, improper and fraudulent trustee sale; (4) fraud; (5) unfair business practices; (6) cancellation of void instruments; (7) slander of title; (8) declaratory relief; and (9) specific performance of contract. The first, second, and ninth causes of action were premised on Hacker's claim that Respondents breached the terms of the DOT and short sale agreement. The remaining causes of action challenged the August 21, 2008 assignment of the DOT and subsequent recorded instruments, which he alleged were " 'void' " and a " 'sham.' "

Defendants filed a demurrer on May 17, 2016 and Sand Canyon filed a demurrer on May 19, 2016. On July 12, 2016, Hacker filed an "opposition to demurrer of defendants AHMSI, Inc.," along with a declaration in which he informs that court that Stearns acquired the property through a settlement agreement "whereby the Cha[i]ssionses assigned us their all rights [sic] they had affecting the property, including the defendants and the [p]roperty itself by way of a Grant Deed to the property signed and acknowledged on or about January 29, 2015."[4] In the opposition, Hacker requested leave to amend the complaint in a brief paragraph that cites case law and statutory authority, but does not introduce any facts to show the trial court

_____

[4] There is no indication in the record that AHMSI filed a demurrer; in fact, as noted above, Hacker claims that AHMSI changed its name to Homeward on May 29, 2012.

6

how he could have amended the complaint to state a valid cause of action. Hacker contemporaneously filed a request for judicial notice (RJN) of the November 20, 2014 settlement agreement, the January 29, 2015 grant deed, the trial court's summary of the case, and the trustee's deed upon sale.

Hacker filed his opposition to Defendants' demurrer on July 14, 2016, which included two requests for leave to amend. The first appears in a brief paragraph wherein he alleges, "facts have developed to warrant amendment, amendment should be granted. Indeed, the very recent foreclosure has materially affected the 'standing' argument trumpeted by Defendants." The second request appears toward the middle of the opposition and merely repeats the same brief paragraph from the July 12, 2016 opposition in which he requests leave to amend. The opposition to Homeward's demurrer does not include any declarations and does not mention the January 29, 2015 grant deed. Hacker filed a second RJN in conjunction with the opposition to Homeward's demurrer in which he requests judicial notice of the same documents that were the topic of his first request along with a number of court documents from federal cases around the country against Larraine Brown, AHMSI, Homeward, Sand Canyon, and Ocwen.[5] Hacker never opposed Sand Canyon's demurrer.

On July 18, 2016, Defendants filed evidentiary objections, including an objection to the admission of Hacker's grant deed on the grounds that it is hearsay; is irrelevant; did not meet the

[5] The RJN also includes a letter of the Trustee's Sale from Homeward dated August 8, 2012 (listed as exhibit 11) and the July 6, 2016 trustee's deed upon sale (listed as exhibit 12). Exhibit 11, however, is a copy of the short sale agreement and exhibit 12 was never attached.

requirements under Evidence Code section 450 et seq.; and "constitutes a default under the provisions of the loan documents, as such transfer of interest in the loan and property requires the lender's consent and no such consent was given."

On July 22, 2016, Hacker filed a motion for leave to amend with a proposed second amended complaint attached. The hearing on the motion for leave to amend was scheduled for August 23, 2016.

The hearing on the demurrers took place on July 25, 2016. The trial court sustained Defendants' evidentiary objections, granted judicial notice of the case summary and August 12, 2012 short sale agreement (incorrectly labeled "Homeward's letter of the Trustee's Sale"), and denied Hacker's RJN of all remaining exhibits, including the grant deed. The trial court sustained the demurrers to all causes of action without leave to amend; Hacker subsequently took his motion for leave to amend off calendar.

Hacker now appeals, presenting two new facts in support of causes of action for wrongful foreclosure and fraud. First, the Chaissionses allegedly deeded the property to Stearns on January 29, 2015; second, the property was sold at a foreclosure auction on July 6, 2016. Hacker contends that these two facts "converted [his] case into a wrongful foreclosure claim." Hacker also contends that he can state a cause of action for fraud, and that his causes of action for unfair business practices, cancellation of void instruments, slander of title, and declaratory relief survive because they are derived from the wrongful foreclosure claim.

**DISCUSSION**

## I.    Standard of review

We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We "accept the truth of material facts properly pleaded in the operative complaint, but not contentions, deductions, or conclusions of fact or law." (*Yvanova v. New Century Mortgage Corp.* (2016) 62 Cal.4th 919, 924.)

Where, as here, an appellant proposes facts and theories that were not heard by the trial court, we determine whether the trial court abused its discretion in denying leave to amend. (Code Civ. Proc., § 472c, subd. (a); *Connerly v. State of California* (2014) 229 Cal.App.4th 457, 460 (*Connerly*).)[6] In applying this standard, we decide whether there is a "reasonable possibility" the plaintiff can amend to state a cause of action. (*Blank v. Kirwan* (1985) 39 Cal.3d 311, 318.) "The burden of proving such reasonable possibility is squarely on the plaintiff." (*Ibid.*) To satisfy that burden on appeal, a plaintiff "must show in what manner he can amend his complaint and how that amendment

---

[6] In *Connerly*, the plaintiff raised a new legal theory on appeal that was based on the same set of facts before the trial court. (*Connerly, supra,* 229 Cal.App.4th at p. 462.) Here, as discussed below, the trial court also had before it all the facts to support Hacker's new legal theory, but did not acknowledge one of the most crucial among them: that Hacker allegedly had a grant deed to demonstrate that he owned the property at the time of the foreclosure. We therefore conclude that applying the abuse of discretion standard to the trial court's denial of leave to amend is appropriate.

9

will change the legal effect of his pleading." (*Goodman v. Kennedy* (1976) 18 Cal.3d 335, 349.)

## II.    The trial court properly sustained the demurrers to all causes of action

The trial court found that Hacker lacked standing to challenge the chain of assignments because:  (1) the DOT required the lender's prior written consent before the borrower could transfer her rights; (2) the short sale agreement prohibited the Chaissionses from assigning the property to another party; (3) the August 21, 2008 assignment was not void; and (4) Hacker was not the owner of the property nor the borrower of the note secured by the property.  We find only the last rationale persuasive; the trial court properly found that, in his FAC, Hacker failed to allege facts establishing an ownership interest in the property sufficient to confer standing.

A.    THE DOT DID NOT PROHIBIT HACKER FROM CLAIMING RIGHTS TO THE PROPERTY

The trial court found that Hacker could not claim rights as the Chaissionses' assignee because, under the DOT, "sale or transfer of the borrower's rights required prior written consent to avoid acceleration of the entire debt."  This conclusion is incorrect.  The DOT includes a clause that states, "[i]f all or any part of the Property or any interest in it is sold or transferred . . . without Lender's prior written consent, Lender may, at its option, require immediate payment in full of all sums secured by this Security Instrument."  This clause imposes no sanctions upon the assignee; it merely gives the lender the option to accelerate the entire debt if the borrower transferred the property without prior written consent.  Therefore, the terms of the DOT did not nullify Hacker's interest in the property.

10

B.    THE SHORT SALE AGREEMENT DID NOT PROHIBIT THE CHAISSIONSES FROM ASSIGNING AN INTEREST IN THE PROPERTY

The trial court also found that the short sale agreement "prohibited" assignment of the property to another party.  The short sale agreement was executed on August 12, 2012 and expired on August 31, 2012 once it became evident that the owner could not deliver free and clear title.  By the time the Chaissionses allegedly gave Hacker a grant deed on January 29, 2015, the short sale agreement no longer had any legal effect.  Therefore, the terms of the short sale agreement were not operative in January of 2015 and have no bearing on the Chaissionses ability to assign rights to the property more than two years after the agreement had expired.

C.    HACKER DID NOT ALLEGE THE DOT VIOLATED THE PSA

The trial court also found that Hacker lacked standing because "to the extent that [he] contends that the [DOT] violated the operative [PSA] related to the securitization of the loan obligation, [Hacker] lacks standing because the assignment would be merely voidable."[7]

---

[7] Under New York law, which governs the PSA, unauthorized acts by a trustee are not void but voidable because the trust's beneficiaries can ratify any such acts.  (*Rajamin v. Deutsche Bank Nat. Trust Co.* (2d Cir. 2014) 757 F.3d 79, 90.)  And, in California, an action for wrongful foreclosure by a borrower will not stand if the challenged assignment is merely voidable, not void.  (*Yvanova v. New Century Mortgage Corp.*, *supra*, 62 Cal.4th at p. 923.)  As discussed below, many courts in New York and California have held that alleged violations of the terms of a PSA are merely voidable and therefore do not confer standing upon a plaintiff to pursue an action for wrongful foreclosure.

11

It appears the trial court misconstrued the nature of Hacker's challenge to the August 21, 2008 assignment. Hacker did not allege that the parties violated the terms of the PSA nor did he challenge any aspect of the securitization process whereby the original mortgage owned by Option One was transferred to the Option One Trust pursuant to the June 1, 2006 PSA. To the contrary, Hacker has consistently maintained his position that the Option One Trust maintained its ownership of the loan from that date forward.

Hacker argues the *subsequent* assignment of the DOT on August 21, 2008 is void, not merely voidable. Throughout the FAC and the second amended complaint, Hacker claimed that the August 21, 2008 assignment by AHMSI to the Soundview Trust, which was conducted on behalf of Option One, was void because Option One had already sold the Chaissionses' loan to the Option One Trust. Option One could not have conveyed the Chaissionses' loan to the Soundview Trust because it no longer had any beneficial interest in the Chaissionses' loan to convey. This contention is not a challenge to the terms of the PSA.

D. BASED ON THE ALLEGATIONS IN THE FAC, THE TRIAL COURT PROPERLY FOUND HACKER LACKED STANDING BECAUSE HE DID NOT HAVE A SUFFICIENT OWNERSHIP INTEREST IN THE PROPERTY

In the FAC, Hacker referred to himself as the "owner" of the property but did not substantiate this claim by attaching the grant deed or otherwise bringing it to the court's attention. Although he claimed ownership of the property via a grant deed in his declaration attached to the July 12, 2014 opposition and attached copies of it to two RJN's, the trial court gave no indication that it had considered this alleged documentary

12

support for Hacker's ostensible ownership of the property. Instead, the trial court focused on Hacker's failure in the FAC to establish that he was the owner of the property or the borrower of the note securing the property. In addressing Hacker's claim that he obtained an "[a]ssignment of [r]ights" from the Chaissionses, the court observed that " 'an estate in real property . . . can be transferred only by deed or by operation of law' " and " '[t]itle passes by deed and not by assignment of the deed to the assignee.' "

To the extent that the trial court confined its analysis to the allegations in the FAC, the sustention of the demurrers as to all causes of action was logical; Hacker failed there to plead an ownership interest in the property sufficient to confer standing. However, our analysis does not stop there. We must determine whether the trial court's denial of leave to amend fell within the court's reasonable discretion.

## III. The trial court abused its discretion in denying leave to amend

The trial court found that Hacker "fail[ed] to specifically identify how amendment can cure the numerous defects discussed above. In light of the numerous defects discussed above, the Court finds that granting leave to amend would be futile."

As noted above, in his July 12, 2016 and July 14, 2016 oppositions to the demurrers, Hacker did not indicate with any specificity how he could amend his complaint to state a cause of action other than to say that "the very recent foreclosure has materially affected the 'standing' argument trumpeted by

13

Defendants."[8]  However, the trial court was on notice that Hacker claimed to have owned the property.  He presented the trial court with evidence of his ownership by attempting to place in the record the grant deed via both of his RJN's, and by informing the court in a declaration filed July 12, 2016 that he had received a grant deed on January 29, 2015.

We therefore find the trial court abused its discretion in denying leave to amend, as Hacker is the owner of the property and has proposed facts that, if true, are sufficient to establish that the August 21, 2008 assignment was void.

Hacker indicates that he would assert six causes of action in a second amended complaint:  wrongful foreclosure, fraud, slander of title, declaratory relief, unfair business practices, and cancellation of instruments.  We find that Hacker has not shown that he can amend the fraud cause of action to allege facts sufficient to state a claim, but has pleaded facts sufficient to establish causes of action for wrongful foreclosure and the remaining actions that derive therefrom.

A.     HACKER HAS STANDING TO BRING A CAUSE OF ACTION FOR WRONGFUL FORECLOSURE

1.     *Hacker has proposed facts sufficient to show that he was the owner of the property*

Hacker obtained a grant deed from the Chaissionses on January 29, 2015.  The grant deed conveyed "any and all of [the

---

[8] Hacker raised specific, amendment-worthy facts in his motion for leave to amend filed on July 22, 2016.  However, as noted above, the court never heard the motion as the hearing on the motion was calendared for August 23, 2016 and the trial court had already sustained the demurrers without leave to amend at the July 25, 2016 hearing.

Chaissions'] interest" in the property to Mark Meador, as trustee for Stearns. Such pleadings would be sufficient to establish a colorable claim that Hacker was the owner of the property at the time of the foreclosure on July 6, 2016.

Defendants argue that the circumstances surrounding the grant deed are "suspicious." In considering the merits of a demurrer, however, "the facts alleged in the pleading are deemed to be true, however improbable they may be." (*Del E. Webb Corp. v. Structural Materials Co.* (1981) 123 Cal.App.3d 593, 604; see *Alcorn v. Anbro Engineering, Inc.* (1970) 2 Cal.3d 493, 496.) To the extent that Defendants would challenge the validity of the grant deed, such a challenge would constitute an issue of triable fact, which is for the trier of fact to decide.[9]

2.      *Hacker has proposed facts sufficient, if true, to show that the August 21, 2008 assignment was void*

The Soundview Trust acquired the property via a foreclosure sale on July 6, 2016. Hacker claims Soundview Trust had no power to foreclose on the property because it was never the true owner of the DOT.

As discussed above, respondents and the trial court have misconstrued Hacker's challenge to the August 21, 2008 assignment as an allegation that the assignment violated the PSA. Were this case, the assignment would indeed be voidable under New York and California law. A number of cases have held that assignments which "allegedly breach[ ] a term or terms of a PSA" are voidable rather than void because "the

_____

[9] Defendants also contend Hacker has not shown that the Chaissionses' note was actually conveyed to the Option One Trust. This is also an issue for the trier of fact to decide.

15

beneficiaries, not the borrower, have the right to ratify the trustee's unauthorized acts." (*Mendoza v. JPMorgan Chase Bank, N.A.* (2016) 6 Cal.App.5th 802, 812–813.)  In contrast, an assignment by a party that never possessed legal title to the property is void.  Hacker's allegation is unequivocally of the latter type.

In *Sciarratta v. U.S. Bank National Assn.* (2016) 247 Cal.App.4th 552 (*Sciarratta*), the plaintiff alleged that the original owner of her DOT, JPMorgan Chase, assigned the DOT to Deutsche Bank in April of 2009.  (*Id.* at p. 557.)  Chase then purported to sell the DOT to Bank of America in November 2009.  (*Ibid.*)  On the same day, Bank of America foreclosed and, as the purported " 'foreclosing beneficiary,' " acquired the property via a trustee's deed upon sale.  (*Id.* at p. 558.)  The court found the assignment to Bank of America void because it had already assigned " 'all beneficial interest' " to Deutsche Bank months earlier.  (*Id.* at p. 564.)

Hacker's factual allegations mirror those of the plaintiff in *Sciarratta*.  Hacker contends Option One sold all beneficial interest in the property when it sold the mortgage to the Option One Trust pursuant to the PSA on June 1, 2006.  Two years later, on August 21, 2008, AHMSI, as successor in interest to Option One, executed an assignment of the DOT to Soundview Trust, with Deutsche Bank as trustee.  Hacker contends this assignment was void because AHMSI had no legal authority to convey an interest in property that it had already sold to the Option One Trust.

We find that Hacker has successfully alleged facts supporting a claim that the August 21, 2008 assignment is void.

16

As such, he has standing to pursue an action for wrongful foreclosure.[10]

---

[10] Sand Canyon alleged in its pleadings and at oral argument that Hacker forfeited his right to allege any causes of action against Sand Canyon because he did not oppose their demurrer, request leave to amend as to them specifically, or address their arguments on appeal. Sand Canyon relies on two cases to support its position: *In re S.B.* (2004) 32 Cal.4th 1287, and *Sciarratta*. In *In re S.B.*, the California Supreme Court noted that "the loss of the right to challenge a ruling on appeal because of the failure to object in the trial court . . . is [a] 'forfeiture,' because a person who fails to preserve a claim forfeits that claim." (*Id.* at p. 1293, fn. 2.) *Sciarratta* observed that ordinarily, when an appellant does not assert the court erred in sustaining the demurrer to all causes of action, "any contentions regarding the correctness of the trial court's ruling sustaining the demurrer to [the unaddressed] causes of action would be abandoned." (*Sciarratta, supra,* 247 Cal.App.4th at p. 568.) *Sciarratta* supported this observation by quoting *Ram v. OneWest Bank, FSB* (2015) 234 Cal.App.4th 1, which notes that "where [a] demurrer [is] sustained without leave to amend, appellant's failure to raise arguments in connection with one of several causes of action is deemed abandonment of that cause of action." (*Ram*, at p. 9, fn. 2, quoting *Bagley v. International Harvester Co.* (1949) 91 Cal.App.2d 922, 926.)

These cases, however, address the failure of a plaintiff to preserve the claim itself, not the failure to preserve a claim as to a particular defendant. We find no support for the contention that a plaintiff forfeits the right to amend a complaint against a defendant who was named as a party to the original complaint but was not thereafter named specifically in the pleadings requesting leave to amend. Indeed, there is no prohibition against the court allowing a party to amend a pleading to add a new party to the action. "The court may, in furtherance of

B.   HACKER FAILS TO PROPOSE FACTS SUFFICIENT TO SUSTAIN A CAUSE OF ACTION FOR FRAUD

With respect to the fraud claim, the trial court also found that Hacker failed to allege any actual misrepresentation, failed to plead facts with the specificity required to support a fraud claim, and was barred by the three-year statute of limitations for fraud.

We agree that Hacker is time-barred from pursuing a cause of action for fraud. "An action for relief on the ground of fraud . . . is not deemed to have accrued until the discovery, by the aggrieved party, of the facts constituting the fraud." (Code Civ. Proc., § 338, subd. (d).)  Hacker asserts that a cause of action accrues when "the damage is complete," and urges us to find that his action for fraud accrued when the July 2016 foreclosure sale took place.  He attempts to support this argument by referencing *Miller v. Bechtel Corp.* (1983) 33 Cal.3d 868 (*Miller*).

Hacker misconstrues *Miller*, *supra*, 33 Cal.3d 868, which held that an action for fraud accrues when a plaintiff becomes aware of facts that would cause a "reasonably prudent person" to suspect fraud.  (*Id.* at pp. 875–876.)  An action for fraud,

---

justice, and on any terms as may be proper, allow a party to amend any pleading or proceeding by adding or striking out the name of any party." (Code Civ. Proc., § 473, subd. (a)(1).)  We therefore see no reason to preclude Hacker from pursuing his claim against all the defendants named in his FAC.  If, as Sand Canyon contends, Hacker cannot plead specific facts as to Sand Canyon's involvement in the allegedly void assignment, Sand Canyon can make such an argument on remand.  We make no determination as to whether the facts regarding Sand Canyon's involvement ended before the contested conveyance occurred, as this is a factual question for the trier of fact to determine.

18

therefore, does not accrue when the damage is "complete," as Hacker argues. The action accrues when a plaintiff first learns that a fraud may have occurred, so long as he or she could have confirmed the fraud through further investigation. (*Ibid.*) *Miller* is thus inapposite.

Here, the action for fraud accrued in August of 2012, when Estrelita Lane, prior trustee to Stearns, learned that there were questionable title documents related to the August 21, 2008 assignment. Hacker is therefore time-barred from bringing an action for fraud.

As we find this cause of action is time-barred by the three-year statute of limitations, we need not address the trial court's findings that Hacker failed to allege any actual misrepresentation or to plead facts with the specificity required to support a fraud claim.

C.    THE REMAINING CAUSES OF ACTION

Hacker alleges claims for slander of title, declaratory relief, unfair business practices, and cancellation of instruments.

The trial court sustained the demurrers to these causes of action because each of them was predicated on the challenge to the August 21, 2008 assignment. As the trial court found Hacker had no standing to challenge any of the assignments in the chain of title, it followed that Hacker could not pursue these derivative claims.

Here, we conclude that Hacker has standing to pursue his claim for wrongful foreclosure. It follows that Hacker also has standing to pursue the remaining claims that derive from his

action for wrongful foreclosure.  (*Glaski v. Bank of America, National Association* (2013) 218 Cal.App.4th 1079, 1101.)[11]

**DISPOSITION**

The judgment is reversed.  The trial court is directed to grant Hacker leave to amend the complaint consistent with this opinion.  The parties are to bear their own costs on appeal.

CERTIFIED FOR PUBLICATION.


JOHNSON, J.

We concur:


CHANEY, Acting P. J.


BENDIX, J.

---

[11] We express no views on the factual merits of Hacker's claims.