Filed 4/2/21  Hacker v. American Home Mortgage Servicing CA2/1

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION ONE

| | |
|---|---|
| RON HACKER, | B301193 |
| Plaintiff and Appellant, | |
| v. | (Los Angeles County Super. Ct. No. BC610795) |
| AMERICAN HOME MORTGAGE SERVICING, INC., et al., | |
| Defendants and Respondents. | |

APPEAL from a judgment of the Superior Court of Los Angeles County.  John P. Doyle, Judge.  Reversed and remanded.

Law Offices of Vincent J. Quigg, Vincent J. Quigg; Law Offices of Joseph P. Simon, Joseph P. Simon for Plaintiff and Appellant.

Doyle & Harris, Christopher H. Doyle for Defendant and Respondent Sand Canyon Corporation.

Wright, Finlay & Zak, Todd E. Chvat, Jonathan D. Fink, and Charles C. McKenna for Defendants and Respondents Homeward Residential, Inc. f/k/a American Home Mortgage Servicing, Inc.; Deutsche Bank National Trust Company, as Trustee For Soundview Home Loan Trust 2006-Opt 3, Asset-Backed Certificates, Series 2006-Opt 3; Western Progressive, LLC; Ocwen Loan Servicing, LLC; Wells Fargo Bank, N.A., as Trustee For Option One Mortgage Loan Trust 2006-2; Power Default Services, Inc.; Brandy Berns; and Vicki Pospisil.

_____

A property owner sued several financial entities and individuals for claims arising from an allegedly void assignment of a deed of trust. The trial court sustained demurrers to the complaint without leave to amend, but we reversed the resulting judgment and directed the court to grant leave to amend. The owner filed a second amended complaint two days beyond the statutory 30 days after remittitur, which defendants moved to have stricken. The court granted defendants' motion, entered a judgment of dismissal, and denied the owner relief from the dismissal pursuant to the discretionary provision of Code of Civil Procedure section 473,[1] finding no surprise, mistake, or excusable neglect.

The owner again appeals, contending the court abused its discretion in denying him relief pursuant to section 473. We conclude the court should have granted mandatory relief, and therefore reverse.

_____

[1] All undesignated statutory references will be to the Code of Civil Procedure.

2

## BACKGROUND

### A. Original and First Amended Complaints

Ron Hacker filed an original and then first amended complaint, alleging that as successor trustee to the 1713 Stearns LaVerne Family Trust, he owned an interest in real property located at 1713-1717 Stearns Drive in Los Angeles, California. Hacker asserted claims arising from a breached short sale agreement and a void assignment of a deed of trust against the following defendants: Homeward Residential, Inc.; Sand Canyon Corporation; Western Progressive, LLC; Deutsche Bank National Trust Company, as Trustee for Soundview Home Loan Trust 2006-OPT 3, Asset-Backed Certificates, Series 2006-OPT 3; Ocwen Loan Servicing, LLC; Linda Greene; Brandy Berns; DOC X; Larraine Brown; Vicki Pospisil; Wells Fargo Bank, N.A., as Trustee for Option One Mortgage Loan Trust 2006-2; Power Default Services, Inc.; T.D. Service Company; and AHMSI Default Services.

On July 25, 2016, the trial court sustained defendants' demurrers to the first amended complaint without leave to amend.

On April 10, 2018, Barry Coleman, Hacker's attorney, suffered a debilitating stroke.

In an opinion filed on August 16, 2018, we affirmed the sustaining of defendants' demurrers, because "Hacker failed to allege facts establishing an ownership interest in the property sufficient to confer standing." (*Hacker v. Homeward Residential, Inc.* (2018) 26 Cal.App.5th 270, 277.) We also held that Hacker was "time-barred from pursuing a cause of action for fraud." (*Id.* at p. 282.) However, we reversed the court's denial of leave to amend—except with respect to the fraud cause of action—

3

because Hacker had presented the trial court with a grant deed purportedly evidencing his ownership of the property. We held: "Hacker has not shown that he can amend the fraud cause of action to allege facts sufficient to state a claim, but he has pleaded facts sufficient to establish causes of action for wrongful foreclosure and the remaining actions that derive therefrom." (*Id*. at pp. 279-280.)

We remanded the matter with a direction to grant leave to amend, issuing our remittitur on October 18, 2018.

## B. Second Amended Complaint

Pursuant to section 472b, Hacker then had until Monday, November 19, 2018, to file his second amended complaint.

A week after the remittitur, on October 25, 2018, Hacker emailed a prior attorney, Danny Chase, about filing a second amended complaint. Chase, who had had a career change, responded neither to this nor several subsequent emails.

Around November 11, 2018, Hacker asked attorney Vincent J. Quigg to represent him. Quigg agreed, but stated he had insufficient time to draft and file a second amended complaint.

Hacker contacted his appellate counsel, Richard Antognini, who on November 14, 2018, asked defendants' counsel for an extension of time to file a second amended complaint. On November 15, defendants indicated they would not stipulate to an extension. Antognini thereupon advised Hacker to substitute in new counsel "immediately," file an ex parte motion to extend the deadline, and, if that was denied, draft and file the amended complaint no later than Monday, November 19, which he advised was "the last day."

4

On November 15, 2018, four days before the filing deadline, Hacker formally retained attorney Vincent J. Quigg to represent him.

On November 16, 2018, Quigg moved ex parte for an extension of time to file an amended complaint. The motion was denied.

At 8:30 p.m. on November 19, 2018, four hours after the filing deadline, Quigg faxed a 150-page second amended complaint to the superior court. (The court accepts filing by facsimile transmission up to 4:30 p.m. on court days, although its fax machine will receive transmissions after that time. Any transmission after 4:30 will be deemed filed the next day. (LASC Local Rules, rule 2.22(b)(2)).) On November 21, the court rejected Quigg's filing because one of the 150 pages had failed to transmit.

On November 21, 2018, Quigg successfully filed the amended complaint, asserting causes of action based on wrongful foreclosure and fraud.

C.      **Motions to Strike the Second Amended Complaint**

Defendants filed two motions to strike the amended complaint, one by Sand Canyon Corporation and the other by the remaining defendants as a group. Sand Canyon argued (1) the amended complaint was untimely because it was filed beyond the statutory 30-day period after remittitur, and (2) the complaint asserted a cause of action for fraud, contravening our holding that the cause of action could not be reasserted. The remaining defendants argued only that the amended complaint was untimely.

By the time of the hearing on February 26, 2019, no opposition to defendants' motions existed in the court's file or was reflected in the docket, and defendants represented they had

received none. Quigg nevertheless represented that he had filed and served an opposition. After oral argument, the court continued the matter to April 5, 2019, and instructed Quigg to file and serve oppositions by March 8.

On March 14, 2019, six days beyond the court's deadline, Quigg emailed defendants oppositions to their motions, oppositions he apparently never filed. In them, he argued the fraud cause of action was legally sufficient, and the second amended complaint was timely filed on November 19, 2018, but "[t]o counsel's surprise, Plaintiff's filing was rejected by the court on November 21, 2018," and "[t]o Plaintiff's counsel's further surprise, the court clerk rejected the fax filing as only 149 of 150 pages were received." Quigg supported the oppositions with his declaration, in which he stated, "On November 19, 2018, I gave the final draft a last and final review, signed the amendment and directed my staff to fax file. [¶] Being that the filing was 150 pages, it took hours to transmit to the courts." Quigg attached to his declaration an unauthenticated fax activity log indicating that a 150-page fax was sent on November 19, 2018, the transmission taking 52 minutes to complete, and completing at 8:32 p.m.

On the April 5, 2019 hearing date, the trial court issued a tentative ruling in which it found that the amended complaint was untimely filed, and granted defendants' motion to have it stricken. After the hearing, the tentative became the final ruling. In it, the court observed that Hacker's attempt to file the second amended complaint on November 19, 2018 was untimely by four hours. The court stated that "even if his initial fax filing had been successful, the SAC would have been deemed filed on November 20, 2018, which is still one day late." "Plaintiff's

6

evidence demonstrates that the subject fax transmission was sent on November 19, 2018, at 8:32 PM. . . . Further, the Court stamped Plaintiff's attempted filing as being received on November 20, 2018."

## D.    Section 473 Motions

Hacker filed two motions to set aside the resulting dismissal pursuant to both the mandatory and discretionary provisions of section 473. In the first, filed in May 2019, he repeated his argument that the tardiness of his amended complaint came as a surprise, because Quigg had timely directed his staff to file the complaint. Hacker supported the motion with Quigg's declaration, wherein he stated: "In the early afternoon of November 19, 2018, I gave the final draft a last and final review, signed the amendment and directed my staff to fax file the Second Amended Complaint. [¶] My office received confirmation that the fax filing was completed on November 19, 2018." The trial court found that Quigg's declaration failed to indicate "how there was surprise," which in any event would not justify relief where the client had also been dilatory.

In August 2019, Hacker "renewed" his motion, and submitted declarations of himself and Coleman "as additional evidence of mistake, inadvertence, and/or neglect." Hacker argued that his "last-minute retention of Mr. Quigg" on November 15, 2018, was caused by Coleman's unavailability due to his stroke, and Antognini caused another two days of delay by misadvising him to file a futile ex parte motion for extension of the filing deadline. The court denied the motion on procedural grounds, finding it to be an inadequate motion for reconsideration. It also found the motion to be substantively

7

meritless, because Quigg failed adequately to explain why he missed the filing deadline.

On August 29, 2019, the court dismissed the lawsuit.

Hacker timely appealed.

After oral argument, we requested supplemental briefing on whether Hacker had a reasonable opportunity before the hearing on his section 473 motion to explain the four-hour filing delay.

## DISCUSSION

### A. The Order Denying Ex Parte Relief is Nonappealable

Hacker contends the trial court abused its discretion in denying his ex parte motion for an extension of time to file the second amended complaint. We have no jurisdiction to entertain this claim.

Absent some statutory or other exception, an order that "fails to dispose of all the causes of action pending between the parties is generally not appealable." (*Kurwa v. Kislinger* (2013) 57 Cal.4th 1097, 1100; see § 904.1.) A final order or judgment is one that "terminates the litigation between the parties on the merits of the case and leaves nothing to be done but to enforce by execution what has been determined." (*Sullivan v. Delta Air Lines, Inc.* (1997) 15 Cal.4th 288, 304.) The trial court's order denying Hacker's motion to extend the filing deadline did not terminate this litigation, and falls within no exception for appealability. Therefore, we may not entertain Hacker's claim that the trial court erred in denying an extension.

### B. The Court Improperly Denied Relief Under the Mandatory Provision of Section 473

Subdivision (b) of section 473 provides for both discretionary and mandatory relief: "The court *may*, upon any

8

terms as may be just, relieve a party . . . from a . . . dismissal . . . taken against him or her through his or her mistake, inadvertence, surprise, or excusable neglect. . . . Notwithstanding any other requirements of this section, the court *shall*, whenever an application for relief is made no more than six months after entry of judgment, is in proper form, and is accompanied by an attorney's sworn affidavit attesting to his or her mistake, inadvertence, surprise, or neglect, vacate any . . . resulting . . . dismissal entered against his or her client, unless the court finds that the . . . dismissal was not in fact caused by the attorney's mistake, inadvertence, surprise, or neglect.  The court shall, whenever relief is granted based on an attorney's affidavit of fault, direct the attorney to pay reasonable compensatory legal fees and costs to opposing counsel or parties." (§ 473, subd. (b), italics added.)

"Under the discretionary relief provision, on a showing of 'mistake, inadvertence, surprise, or excusable neglect,' the court has discretion to allow relief from a 'judgment, dismissal, order, or other proceeding taken against' a party or his or her attorney. Under the mandatory relief provision, on the other hand, upon a showing by attorney declaration of 'mistake, inadvertence, surprise, or neglect,' the court shall vacate any 'resulting default judgment or dismissal entered.' " (*Leader v. Health Industries of America, Inc.* (2001) 89 Cal.App.4th 603, 615-616 (*Leader*).)  "The range of attorney conduct for which relief can be granted in the mandatory provision is broader than that in the discretionary provision, and includes inexcusable neglect." (*Id*. at p. 616.)  "The term 'surprise,' as used in section 473, refers to ' "some condition or situation in which a party . . . is unexpectedly placed to his injury, without any default or negligence of his own, which

9

ordinary prudence could not have guarded against." ' " (*State Farm Fire & Casualty Co. v. Pietak* (2001) 90 Cal.App.4th 600, 611.)

"The law strongly favors trial and disposition on the merits. Therefore, any doubts in applying section 473 must be resolved in favor of the party seeking relief. When the moving party promptly seeks relief and there is no prejudice to the opposing party, very slight evidence is required to justify relief. We will more carefully scrutinize an order denying relief than one which permits a trial on the merits." (*Mink v. Superior Court* (1992) 2 Cal.App.4th 1338, 1343.)

We review de novo whether Hacker was entitled to mandatory relief. (*Leader*, *supra*, 89 Cal.App.4th at p. 612.)

"To obtain mandatory relief under section 473, plaintiffs' counsel need not show that his or her mistake, inadvertence, surprise or neglect was excusable. No reason need be given for the existence of one of these circumstances. Attestation that one of these reasons existed is sufficient to obtain relief, unless the trial court finds that the dismissal did not occur because of these reasons." (*Graham v. Beers* (1994) 30 Cal.App.4th 1656, 1660.) "The purpose of the attorney affidavit provision 'is to relieve the innocent client of the burden of the attorney's fault, to impose the burden on the erring attorney, and to avoid precipitating more litigation in the form of malpractice suits.' " (*Lorenz v. Commercial Acceptance Ins. Co.* (1995) 40 Cal.App.4th 981, 990.)

Although section 473 on its face affords mandatory relief from "dismissal," courts have construed it as limited to those dismissals that are " 'the procedural equivalent of defaults—i.e., those which occur because the plaintiff's attorney has failed to oppose a dismissal motion.' " (*Generale Bank Nederland v. Eyes*

*of the Beholder Ltd.* (1998) 61 Cal.App.4th 1384, 1397.) The purpose of the statute is "to put plaintiffs whose cases are dismissed for failing to respond to a dismissal motion on the same footing with defendants who are defaulted for failing to respond to an action" (*Peltier v. McCloud River R.R. Co.* (1995) 34 Cal.App.4th 1809, 1824 (*Peltier*), i.e., "to alleviate the hardship on parties who *lose their day in court*" *Huens v. Tatum* (1997) 52 Cal.App.4th 259, 264, disagreed with on other grounds in *Zamora v. Clayborn Contracting Group, Inc.*, *supra*, 28 Cal.4th at pp. 256-257). A party whose attorney has already opposed a motion to dismiss has had his day in court.

Therefore, courts have roundly held that discretionary evaluations of an attorney's misfeasance in the context of a motion to strike an untimely pleading pursuant to sections 436 and of 581, subdivision (f)(2) cannot be nullified by an affidavit of fault under section 473. (*Castro v. Sacramento County Fire Protection Dist.* (1996) 47 Cal.App.4th 927, 933 [dismissal entered for lapse of the limitations period]; *Bernasconi Commercial Real Estate v. St. Joseph's Regional Healthcare System* (1997) 57 Cal.App.4th 1078, 1080 [failure to serve a complaint in a timely manner]; *Peltier*, *supra*, 34 Cal.App.4th at p. 1817 [failure to prosecute]; *Leader*, *supra*, 89 Cal.App.4th at p. 620 [failure to file an amended complaint after a demurrer has been sustained with leave to amend].) "[N]early every discretionary dismissal is caused by the mistake, inadvertence or neglect of the plaintiff's attorney." (*Peltier*, at p. 1816.) If this vast majority of plaintiffs whose actions are dismissed on account of attorney neglect could obtain mandatory relief from dismissal under section 473, that section would "in effect nearly nullif[y] the discretionary

11

dismissal statutes, as few dismissals entered thereunder would ever assuredly be final." (*Ibid.* 1816.)

Although here, Hacker's attorney opposed a motion to dismiss, he did not do so on grounds such as would permit full briefing and consideration of the four-hour delay in fax filing the second amended complaint on November 19, 2018. Nothing in the record indicates that the parties briefed and argued the impact of Quigg's four-hour filing delay as part of the defendants' motions to strike the second amended complaint, which were grounded solely on the two-day delay. That delay was mentioned for the first time in the court's order granting the motions.

Therefore, the mandatory provision of section 473 remained a viable option to vacate dismissal. (See *Leader*, *supra*, 89 Cal.App.4th at pp. 617, 619 [default results only from failure to appear].)

We conclude the trial court erred in denying mandatory relief. Such relief need be accompanied only by an attorney's declaration of his or her mistake, inadvertence, surprise, or neglect. Here, Hacker declared that he reviewed the second amended complaint in the early afternoon of November 19, 2018, and gave it to his staff, but that the filing was not achieved until four hours after the deadline due to the mistake, inadvertence, surprise, or neglect of his staff. This sufficed for mandatory provision relief under section 478. Because of our holding, we need not address discretionary relief under section 473.

We will therefore remand the matter with directions to grant Hacker relief under the mandatory provision of section 473 and order whatever equitable relief the trial court deems appropriate. (§ 473, subd. (c).)

12

Defendants argue that mandatory relief was unavailable in any event because the true underlying cause of the untimely filing was Hacker himself, not Quigg.  We disagree.  Although Hacker delayed somewhat in retaining Quigg, he lost one attorney to a medical condition and a second to a career change, and made efforts to seek representation through his appellate attorney, eventually retaining Quigg.  And when time came to file the second amended complaint, Hacker was refused even a minimal extension.  He nevertheless retained Quigg in time to file the second amended complaint.  We therefore conclude that Hacker was not at fault for the late filing, which was in fact caused by Quigg or his staff.

## DISPOSITION

The judgment is reversed and the matter remanded for further proceedings.  Each side is to bear its own costs on appeal.

NOT TO BE PUBLISHED


CHANEY, J.

We concur:



ROTHSCHILD, P. J.



BENDIX, J.

13