Filed 2/25/26  Salas v. Automobile Club of Southern Cal. CA2/2

## NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION TWO

| | |
|---|---|
| AMANDA SALAS, <br><br> Plaintiff and Respondent, <br><br> v. <br><br> AUTOMOBILE CLUB OF SOUTHERN CALIFORNIA et al., <br><br> Defendants and Appellants. | B344917 <br><br> (Los Angeles County Super. Ct. No. 24STCV24554) |

APPEAL from an order of the Superior Court of Los Angeles County, Elihu M. Berle, Judge. Reversed and remanded.

Jackson Lewis, Michael D. Thomas, Payam Malakouti, Dylan B. Carp; John K. Beckley and Michael P. Wallock for Defendants and Appellants.

Wilshire Law Firm, John G. Yslas, Jeffrey C. Bils and Edward Kim for Plaintiff and Respondent.

————————————

Defendants Automobile Club of Southern California and ACSC Management Services, Inc. (collectively, the Auto Club) appeal the trial court's order denying its motion to compel arbitration. We conclude the trial court erred; accordingly, we reverse and remand for further proceedings.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Amanda Salas filed a class action complaint in 2024 alleging class-wide causes of action for: (1) violations of the California Equal Pay Act, Labor Code section 1197.5; (2) violations of the Fair Employment and Housing Act (FEHA), Government Code section 12940, subdivisions (a), (c), (i) and (j)(1); (3) failure to prevent harassment, discrimination and retaliation in violation of Government Code section 12940, subdivision (j)(1); (4) failure to produce requested employment records, Labor Code sections 226 and 1198.5; and (5) violations of the Unfair Business Practices Act, Business and Professions Code section 17200.

Salas also alleged two individual causes of action for retaliation, one under Government Code section 12940 and the other under Labor Code section 1102.5.

As pleaded in her complaint, Salas discovered in 2022 that the Auto Club was "offering substantially higher salaries to new male casualty adjusters than to female casualty adjusters with very similar resume history." The Auto Club was also offering these male prospective employees higher salaries "than what she and her [female] colleagues were making." After she "resolved to bring the pay inequities" to the Auto Club's attention, the Auto Club retaliated against her by revoking her duties screening new hires, transferring her to a different department, subjecting her to increased scrutiny, depriving her of an opportunity for advancement, and transferring her a second time to a position requiring a 55-minute one-way commute.

The second cause of action alleged "[t]hese discriminatory practices created a hostile work environment in which individuals, particularly those of female sex/gender, and/or those who were not white, were subjected to disadvantageous terms, conditions, and/or privileges of employment, including but not limited to refusal to pay equally, based not on the content of their character or work performance, but based on sex/gender and/or race/ethnicity."

A first amended class action complaint (FAC) was filed with the same allegations but added a claim for civil penalties under the Private Attorneys General Act of 2004 (PAGA; Lab. Code, § 2698 et seq.).

The Auto Club brought a motion to compel arbitration, arguing the Federal Arbitration Act (FAA; 9 U.S.C. § 1 et seq.) applied to an arbitration agreement signed by Salas covering all employment disputes. Salas opposed the motion, arguing the action included claims for sexual harassment, which precluded arbitration of the entire action under the Ending Forced Arbitration of Sexual Assault and Sexual Harassment Act of 2021 (EFAA; 9 U.S.C. §§ 401, 402), not only those claims alleging harassment. Salas also contended the arbitration agreement should not be enforced because it was unconscionable.

At oral argument the trial court heard from both parties and then denied the motion to compel arbitration, concluding Salas had stated a claim for sexual harassment and under recent caselaw, the EFAA precluded arbitration of the entire case.

The Auto Club timely appealed. (See Cal. Rules of Court, rule 8.104(a)(1)(A) & (c)(2).)

## DISCUSSION

### I.   Standard of Review

"Where, as is the case here, ' "the trial court's denial of a petition to arbitrate presents a pure question of law, we review the

3

order de novo." ' " (*Liu v. Miniso Depot CA, Inc.* (2024) 105 Cal.App.5th 791, 800 (*Liu*).)

## II.    The EFAA

In 2022, Congress amended the FAA by passing the EFAA. The EFAA was enacted following "concerns that compelled arbitration of sexual harassment claims can perpetuate unacceptable behavior and minimize its consequences by diverting such claims from public court proceedings into a private forum." (*Liu*, *supra*, 105 Cal.App.5th at p. 795.) The EFAA precludes enforcement of an agreement to arbitrate at the plaintiff's election with respect to a case relating to conduct constituting a sexual assault dispute or sexual harassment dispute. (9 U.S.C. § 402(a).)[1] The EFAA also provides that "[a]n issue as to whether this chapter applies with respect to a dispute shall be determined under Federal law." (*Id.*, § 402(b).)

The EFAA defines the term "sexual harassment dispute" as "a dispute relating to conduct that is alleged to constitute sexual harassment under applicable Federal, Tribal, or State law." (9 U.S.C. § 401(4).)

Several cases have recently concluded that where a plaintiff has alleged both claims for sexual harassment or sexual assault *and* other kinds of claims, the EFAA precludes arbitration of the entire case, not merely the sexual harassment or sexual assault claims. (See, e.g., *Doe v. Second Street Corp.* (2024)

---

[1]    The specific language is: "[A]t the election of the person alleging conduct constituting a sexual harassment dispute or sexual assault dispute, . . . no predispute arbitration agreement or predispute joint-action waiver shall be valid or enforceable with respect to a case which is filed under Federal, Tribal, or State law and relates to the sexual assault dispute or the sexual harassment dispute." (9 U.S.C. § 402(a).)

4

105 Cal.App.5th 552, 573–577; *Liu, supra,* 105 Cal.App.5th at pp. 803–806.)[2]

However, this case raises a different issue that must be addressed before the question raised in *Doe* and *Liu* can be answered; namely, has Salas alleged a claim for sexual harassment or sexual assault at all?

There is no published California decision determining the standard for deciding whether Salas has adequately alleged a sexual harassment dispute within the meaning of the EFAA.

Federal district courts have reached different results as to the appropriate standard. Some have held the EFAA applies only where the plaintiff's sexual harassment related claims are capable of withstanding a motion to dismiss under Federal Rules of Civil Procedure, rule 12(b)(6) (28 U.S.C.). (See, e.g., *Yost v. Everyrealm, Inc.* (S.D.N.Y. 2023) 657 F.Supp.3d 563, 577, 586 [requiring a plaintiff's claim to meet the federal "plausibility" standard articulated in *Bell Atl. Corp. v. Twombly* (2007) 550 U.S. 544, 570 and *Ashcroft v. Iqbal* (2009) 556 U.S. 662, 678 in order to avoid arbitration via the EFAA].) The Auto Club asks this court to adopt the *Yost* standard.

At least one district court has adopted instead the standard articulated in *Bell v. Hood* (1946) 327 U.S. 678, asking whether the alleged claim is " 'wholly insubstantial and frivolous' or 'appears to be immaterial and made solely for the purpose of obtaining jurisdiction.' " (*Diaz-Roa v. Hermes Law, P.C.* (S.D.N.Y. 2024) 757 F.Supp.3d 498, 542 (*Diaz-Roa*) [Congress intended in passing

---

[2] See also *Turner v. Tesla, Inc.* (N.D.Cal. 2023) 686 F.Supp.3d 917, 921, 924–926 (entire case withstood arbitration agreement where employer did not dispute the plaintiff brought both sexual harassment and nonsexual harassment claims).

the EFAA only that "the conduct must be actually alleged and with sufficient specificity that the court is able to determine the law is applicable and that there is a real and nonfrivolous reason to believe that the conduct violates that law against sexual harassment"].)

Salas urges us to set a different course and adopt California's liberal pleading standards, citing *Hacker v. Homeward Residential Inc.* (2018) 26 Cal.App.5th 270, 280 (*Hacker*) for the rule that " 'the facts alleged in the pleading are deemed to be true, however improbable they may be.' "

Here, we need not resolve this thorny issue of pleading standards because under any of the above pleading standards, Salas has not met her burden.

## III. Sexual Harassment Claims Under California Law

Here, Salas argued, and the trial court agreed, that she had alleged a claim for sexual harassment. The court specifically pointed to the allegation in the second cause of action that the discriminatory practices created "a hostile work environment" in which female employees were "subjected to disadvantageous terms, conditions, and/or privileges of employment." The court also pointed to allegations in the FAC regarding the retaliation Salas suffered after she complained about the pay inequity: threatening her job status and benefits; changing her job responsibilities; transferring her involuntarily; and marking her down on her job evaluation. And we note the title of the second cause of action in the FAC specifically references Government Code section 12940, subdivision (j)(1), which includes harassment on the basis of sex and gender.

Although the parties dispute the appropriate pleading standard as noted above, they do not dispute the question whether

6

the conduct alleged by Salas constitutes sexual harassment should be resolved by reference to California law.

Under FEHA, it is an unlawful employment practice for an employer to harass an employee based on membership in a protected class, including sex or gender. (*Bailey v. San Francisco Dist. Attorney's Office* (2024) 16 Cal.5th 611, 626 (*Bailey*); see also Gov. Code, § 12940, subd. (j)(1).) "Harassment includes '[v]erbal harassment' such as 'epithets, derogatory comments or slurs on a basis enumerated in [FEHA]' (Cal. Code Regs., tit. 2, § 11019, subd. (b)(2)(A)); it also includes '[p]hysical' and '[v]isual forms of harassment' (*id.*, subd. (b)(2)(B), (C))." (*Bailey,* at p. 627, second brackets added.)

Harassment and discrimination claims, while they may overlap, are nevertheless distinct. "Unlike FEHA discrimination claims, which address only *explicit* changes in the 'terms, conditions, or privileges of employment' . . . , harassment claims focus on 'situations in which the *social environment* of the workplace becomes intolerable because the harassment (whether verbal, physical, or visual) communicates an offensive message to the harassed employee.' " (*Bailey, supra,* 16 Cal.5th at p. 627, quoting *Roby v. McKesson Corp.* (2009) 47 Cal.4th 686, 706 (*Roby*).) "In other words, 'discrimination refers to bias in the exercise of official actions on behalf of the employer' whereas 'harassment refers to bias that is expressed or communicated through interpersonal relations in the workplace.' " (*Bailey,* at p. 627*,* quoting *Roby,* at p. 707.)

Applying the foregoing distinction, it is apparent the conduct of pay inequity between men and women as alleged in Salas's FAC constitutes sex discrimination, not harassment, despite Salas's use of the term "hostile work environment."

To be sure, there are allegations in the FAC regarding conduct of an interpersonal nature, such as those referenced by the trial court: threatening Salas's job status, taking away responsibilities, transferring her, marking down her performance evaluation, and denying a postponement of her transfer. However, the FAC characterizes each such act as retaliation for Salas's complaining about pay inequity. However, they are not stated as retaliation claims for complaining about anything other than alleged discriminatory pay differences.

For these reasons, the authorities cited by the trial court and Salas on appeal do not support the trial court's ruling. For example, it is certainly true, as the trial court noted, that FEHA's definition of "sexual harassment" states "[s]exually harassing conduct need not be motivated by sexual desire." (Quoting Gov. Code, § 12940, subd. (j)(4)(C).) But this definition merely reflects the United States Supreme Court's articulation of this concept from *Oncale v. Sundowner Offshore Services, Inc.* (1998) 523 U.S. 75, 80 ("harassing conduct need not be motivated by sexual desire"). For instance, a hostile environment claim can be based on allegations the plaintiff had been subjected to longstanding ridicule, insult, threats, rumors about her sexual activity and especially exacting work requirements by coworkers who resented a female employee's entry into a law enforcement position. (*Accardi v. Superior Court* (1993) 17 Cal.App.4th 341, 346, 349–350.) The definition does not eliminate the distinction between discrimination and harassment claims as articulated by the California Supreme Court, *ante*. (*Bailey*, *supra,* 16 Cal.5th at p. 627, quoting *Roby, supra,* 47 Cal.4th at p. 706.)

And we readily agree FEHA's " 'prohibition against sexual harassment includes protection from a broad range of conduct, ranging from expressly or impliedly conditioning employment

8

benefits on submission to or tolerance of unwelcome sexual advances, to the creation of a work environment that is hostile or abusive on the basis of sex.' " (*Lewis v. City of Benicia* (2014) 224 Cal.App.4th 1519, 1524; see also *id.* at p. 1527 [reversing summary judgment on a hostile work environment claim where the defendant showed lewd images to the plaintiff and told him " 'risqué' " jokes, gave him underwear as a gift, and asked him to kiss him].) But here, Salas only complained about pay disparities at her workplace.

Nor is this a case where some "official employment actions . . . contributed to the hostile message [the defendant] was expressing to [the plaintiff] in other, more explicit ways." (*Roby*, *supra*, 47 Cal.4th at p. 709.) In *Roby*, the California Supreme Court held that "discrimination and harassment claims can overlap as an evidentiary matter. The critical inquiry . . . is whether the evidence indicates violations of both FEHA prohibitions, but nothing prevents a plaintiff from proving these two violations with the same (or overlapping) evidentiary presentations." (*Ibid.*)

In *Roby*, there was evidence of *both* interpersonal harassment on the basis of disability or medical condition, *and* official employment actions. Specifically, the defendant made demeaning comments to the plaintiff about her body odor and sores on her arms, refused to respond to her greetings, made demeaning facial expressions and gestures toward her, and excluded her from gift giving. (*Roby, supra,* 47 Cal.4th at p. 709.) The trial court erred when it "allocated [the plaintiff's] evidence between her discrimination claim and her harassment claim, and on that basis found the evidence of harassment insufficient." (*Id.* at pp. 709–710.)

Similarly, *Miller v. Department of Corrections* (2005) 36 Cal.4th 446, 466 through 468, does not stand for the proposition that any discriminatory conduct may be defined as harassment as well. In *Miller*, a prison warden engaged in sexual affairs with three subordinate employees, favored his sexual partners with employment benefits he denied to others, publicly fondled female employees, and allowed his sexual partners to demean and harass the plaintiffs. The California Supreme Court held "when such sexual favoritism in a workplace is sufficiently widespread it may create an actionable hostile work environment in which the demeaning message is conveyed to female employees that they are viewed by management as 'sexual playthings' or that the way required for women to get ahead in the workplace is to engage in sexual conduct with their supervisors or the management." (*Id.* at p. 451.)

Simply put, no case has been cited, and we have found none, in which a plaintiff's claim for discriminatory conduct such as pay differences, and retaliation for complaining about the same, was independently sufficient to constitute sexual harassment.

Salas acknowledges the hostile work environment allegations in her FAC are tied to the alleged gender-based pay inequities, and the retaliation she suffered after she complained about such inequities. Since we have rejected the equivalence of a pay discrimination claim with a harassment claim, and since the retaliation claim is based on complaints regarding such discrimination rather than regarding harassment, the pleadings in this case do not withstand California's liberal pleadings standard[3]

---

[3]     That is, we accept the factual allegations as true. (*Hacker, supra*, 26 Cal.App.5th at p. 280.) However, we are not bound to accept legal conclusions such as whether the acts "created a hostile

or either of the federal standards articulated above.[4] Accordingly, the trial court erred.

## DISPOSITION

The order denying the Auto Club's motion to compel arbitration is reversed and the matter is remanded for further proceedings. The parties are to bear their own costs on appeal. (See Cal. Rules of Court, rule 8.278(a)(5).)

RICHARDSON, J.

WE CONCUR:

LUI, P. J.                    GILBERT, J.*

---

work environment." (*Shaeffer v. Califia Farms, LLC* (2020) 44 Cal.App.5th 1125, 1140 [" 'likely to deceive reasonable consumers' " is a legal conclusion that need not be accepted as true on demurrer].)

[4] With respect to the *Bell v. Hood* standard proposed by *Diaz-Roa,* we find the allegations regarding sexual harassment to be objectively " 'insubstantial' " or " 'immaterial' " in that they do not permit a court to find the conduct violative of state law against sexual harassment. (*Diaz-Roa, supra,* 757 F.Supp.3d at p. 542.) We thus need not ask whether the allegation of harassment was subjectively " 'frivolous' " or "made for an 'improper purpose.' " (*Id.* at p. 541.) The higher "plausibility" standard is thus also unmet. (*Ibid.*)

* Retired Presiding Justice of the Court of Appeal, Second Appellate District, assigned by the Chief Justice pursuant to article VI, section 6 of the California Constitution.

11